IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

Renee Galloway
et al.,
        Plaintiffs,

v.                                    Civil Action No. 3:19-cv-314

Justin Martorello,
et al.,
        Defendants.

**MEMORANDUM OPINION**

This matter is before the Court on the MOTION TO DISMISS THE COMPLAINT PURSUANT TO RULE 12(b)(5) AS TO DEFENDANT BREAKWATER HOLDINGS, LLC ("the 12(b)(5) Motion") (ECF No. 403). Having considered the briefing and having heard oral argument, the MOTION TO DISMISS THE COMPLAINT PURSUANT TO RULE 12(b)(5) AS TO DEFENDANT BREAKWATER HOLDINGS, LLC ("the Motion") (ECF No. 403) will be denied.

**BACKGROUND**

This case comes out of a long series of litigation concerning Matt Martorello ("Martorello") and his short-term loan schemes. CLASS ACTION COMPLAINT ("Compl.") ¶ 1, 11 (ECF No. 1). Martorello allegedly engaged in a "rent-a-tribe" scheme in order to make usurious short-term loans with interest rates in the triple digits. Id. at ¶¶ 1, 6.

Breakwater Holdings LLC ("Breakwater") is one of Martorello's companies allegedly entangled within his corporate

web. Id. at ¶ 17. Breakwater is incorporated under the laws of the Cook Islands. Id. at ¶ 61. Plaintiffs allege Martorello created it to "conceal his ownership interest in the companies involved in the [allegedly illegal lending] scheme and create an additional layer of protection for the illegal money received from consumers." Id.

Martorello created an elaborate and ever-shifting corporate structure. To understand Breakwater's role in the enterprise, it is necessary here to explain that structure. The record shows that the Lac Vieux Desert Band of Lake Superior Chippewa Indians ("the Tribe"), at Martorello's urging, created Red Rock Tribal Lending ("Red Rock"), later rebranded as Big Picture Loans, LLC ("Big Picture"), to issue high-interest short-term loans via the internet. Williams v. Big Picture Loans, LLC, 929 F.3d 170, 174 (4th Cir. 2019).[1] On October 25, 2011, Red Rock hired Martorello's company, Bellicose VI ("Bellicose"), as its servicer to "completely" operate the lending business. Williams v. Big Picture, No. 3:17cv461, 2020 WL 6784352, at *5 (E.D. Va. Nov. 18, 2020) ("Misrepresentation Opinion"). Under the Servicing Agreement, Bellicose received 98% of all gross

---

[1] Big Picture was originally a defendant in a related suit but, as it is an arm of the tribe, Big Picture was dismissed. Williams v. Big Picture Loans, LLC, 929 F.3d 170 (4th Cir. 2019).

2

proceeds from the lending operation.[2] On July 31, 2012, with retroactive effect to the start of Bellicose's service agreement, Bellicose assigned the servicing agreement to SourcePoint VI ("SourcePoint"), its wholly owned subsidiary.[3] As was the case with Bellicose, SourcePoint also received 98% of all net profits from the loan operation. Id. From 2011 to 2016, the money ran through a convoluted series of corporations from SourcePoint to Bluetech.

From October 25, 2011 to December 31, 2013, Breakwater received 70% of the total revenue from the lending operation, the other 30% went directly to Matt Martorello and his brother, Justin Martorello.[4] See also Bellicose Capital Corporate Structure at 3 (ECF No. 494-8). On January 1, 2014 Martorello

---

[2] SERVICING AGREEMENT BETWEEN RED ROCK TRIBAL LENDING, LLC AND BELLICOSE VI, INC at 2.25; 3.5.1 (ECF No. 494-1).

[3] Misrepresentation Opinion at *7; AMENDED & RESTATED SERVICING AGREEMENT BETWEEN RED ROCK TRIBAL LENDING, LLC AND SOURCEPOINT VI, LLC at 2.25; 3.5.1 (ECF No. 494-2).

[4] The record shows that Bellicose owned 100% of SourcePoint and "all of [SourcePoint's] net profits, net losses, expenses and items of income, gain, loss, and credit" were "allocated" to Bellicose. OPERATING AGREEMENT OF SOURCEPOINT VI, LLC at 1, § IV(A); Amend. A (ECF No. 494-3). Bellicose then distributed 30% of the funds to MBM Services (owned 95% by Martorello and 5% by his brother, Justin Martorello) and 70% to 7X Services. MBM SERVICES, LLC OPERATING AGREEMENT at Article 3.1; 14 (ECF No. 494-7). Breakwater also held 100% voting interest in Bellicose. OPERATING AGREEMENT OF BELLICOSE VI, LLC at § II(E)-(F), Exhibit A (ECF No. 494-4). 7X Services then distributed 100% of that money to Breakwater which, in turn, then distributed 100% of the money to M. Martorello Irrevocable Trust, later re-named Bluetech. 7X SERVICES OPERATING AGREEMENT at Exhibit A (ECF No. 494-6); OPERATING AGREEMENT OF BREAKWATER HOLDING LLC at Exhibit "A" (ECF No. 494-5); CERTIFICATE OF REGISTRATION UPON CHANGE OF NAME (ECF No. 494-22).

made several alterations to his corporate structure.[5] See also Bellicose Capital Corporate Structure at 4-6. It appears that, from January 1, 2014 to January 1, 2016, Breakwater had no role in the enterprise.

In January 2016, the lending enterprise went through a general re-structuring. On January 26, 2016, SourcePoint and Bellicose Capital merged into Ascension Technologies, a tribal entity. Before the sale, Martorello had created a new company called Eventide Credit Acquisitions ("Eventide") to effectuate the sale of Bellicose Capital to the Tribe.[6] However, Martorello structured the sale to continue to profit from the lending enterprise. To pay for Bellicose, the Tribe signed a Secured Promissory Note in which it was obliged to pay Eventide between 94-96% of the enterprise's gross revenue up to $300,000,000 or seven years.[7] The money then flowed from Eventide through a

---

[5] Bellicose VI transferred its interest in SourcePoint to Bellicose Capital. AMENDED AND RESTATED OPERATING AGREEMENT OF BELLICOSE CAPITAL, LLC at 1 (ECF No. 494-9). Justin Martorello's share in SourcePoint, through Bellicose Capital, increased to 10%. Id. Alpha Tau Capital replaced 7X Service's and owned 60% of SourcePoint. Id. This new structure lasted until July 1, 2014. On that date, Martorello transferred a 4.5% interest between Brian McFadden, James Dowd, and Simon Liang, three individuals also engaged in the lending scheme and former defendants in this suit. Id.; March 3, 2020 ORDER (ECF No. 324).

[6] OPERATING AGREEMENT OF EVENTIDE CREDIT ACQUISITIONS, LLC (ECF No. 494-12).

[7] AGREEMENT AND PLAN OF MERGER BETWEEN LVD TRIBAL ACQUISITIONS COMPANY, LLC AND BELLICOSE CAPITAL, LLC AND EVENTIDE CREDIT ACQUISITIONS, LLC at § 2.7(ECF No. 494-14); SECURED PROMISSORY NOTE at §§ 1.2, 1.3(ECF No. 494-15).

series of corporations. After the sale, Eventide's members were as follows: Breakwater (59.5%); Gallant Capital (25.5%); Justin Martorello (10%); Brian McFadden (2%); James Dowd (1.5%); and Simon Liang (1.5%). Id. at Schedule A.[8] Throughout this period, Breakwater continued to be completely owned by Bluetech.[9]

Plaintiffs have asserted twenty-eight claims against Breakwater under state and federal laws. Compl. at 55-82. The Complaint denotes the claims as Causes of Action (such as "FIRST CAUSE OF ACTION"). This Memorandum Opinion refers to these claims as Counts (such as "COUNT ONE.") The Court dismissed, without prejudice, COUNTS SIX to TWENTY-SEVEN in their entirety and COUNTS TWENTY-EIGHT through THIRTY, except as asserted under Virginia law. September 23, 2021 MEMORANDUM ORDER (ECF No. 371).[10] For purposes of deciding the Rule 12(b)(2) motion, the two RICO counts (COUNTS ONE and TWO) are asserted by Plaintiffs as the providing the jurisdictional predicate.

_____

[8] As of July 15, 2015, Eventide's members were as follows: Kairos Holdings, LLC (59.5%); Gallant Capital (25.5%); Justin Martorello (10%); Brian McFadden (2%); James Dowd (1.5%); and Simon Liang (1.5%). Id. at Schedule A. On January 1, 2016, Kairos transferred its 59.6% interest in Eventide to Breakwater. INTEREST TRANSFER AGREEMENT (ECF No. 321-4).

[9] Breakwater FINANCIAL INTEREST DISCLOSURE STATEMENT (ECF No. 63) ("The sole member of Breakwater is Guardian Trust Corporation as trustee of the Bluetech Irrevocable Trust").

[10] As to Bluetech, the remaining claims are the claims under the Racketeer Influenced and Corrupt Organization Act ("RICO") (18 U.S.C. § 1962(c) and (d)) under COUNTS ONE and TWO; the unjust enrichment and civil conspiracy claims under Virginia law under COUNTS TWENTY-SEVEN and TWENTY-NINE; and the related aiding and abetting claim under COUNT THIRTY.

5

Breakwater now comes before the Court challenging the adequacy of the service of process.

## DISCUSSION

**Legal Framework**

Fed. R. Civ. P. 12(b)(5) allows for dismissal if there has been "insufficient service of process." Fed. R. Civ. P. 4 outlines the requirements for sufficient service of process in federal court.

Among several appropriate methods of service, a corporation, either foreign or domestic, may be served by "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process," Fed. R. Civ. P. 4(h)(1)(B), or in the same manner as any individual, Fed. R. Civ. P. 4(h)(1)(A). In turn, an individual may be served by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Fed. R. Civ. P. 4(e)(1). In this case, Plaintiffs did not deliver a copy of the summons and the Complaint to Breakwater's agent, but service was made in accordance with Virginia law.

6

**Analysis**

Plaintiffs have shown that they made two good-faith efforts to serve Breakwater: attempted personal service on Matt Martorello and substitute service through the Secretary of the Commonwealth of Virginia, as the statutory agent of Breakwater. AFFIDAVIT OF NON-SERVICE (ECF No. 509-4); AFFIDAVIT FOR SERVICE OF PROCESS ON THE SECRETARY OF THE COMMONWEALTH (ECF No. 509-17). One was successful; the other was not.

Plaintiffs' best efforts notwithstanding,[11] it is beyond dispute that there was no actual personal service on one of Breakwater's agents. Plaintiffs tried unsuccessfully to serve Martorello, but service was never effectuated. AFFIDAVIT OF NON-SERVICE; MEMORANDUM IN SUPPORT OF MOTION TO DISMISS THE COMPLAINT UNDER RULE 12(b)(5) BY DEFENDANT BREAKWATER HOLDINGS, LLC ("Memo. in Supp.") at 2, 4 (ECF No. 538). As a result, Plaintiffs' first theory of service, service on Breakwater's officer or agent, fails.

_____

[11] Plaintiffs hired a professional service process server to serve Martorello, as the agent of Breakwater. According to the service processor's affidavit, he attempted service on Martorello's address on five separate occasions. During one attempt, a man, who the service processor later identified as Martorello, answered but denied knowing any of the entities that the processor was trying to serve. The record in this case establishes that statement to be untrue. Martorello, Breakwater's owner, certainly knew of the entity. On another occasion, the service processor saw adults in the house, but no one responded to the process servers' knock on the front door of the residence. AFFIDAVIT OF NON-SERVICE.

However, Virginia law allows for substitute service on nonresident defendants. Va. Code § 8.01-329(A). Plaintiffs also attempted, this time successfully, substitute service on Breakwater in accord with Va. Code § 8.01-329. That provision applies equally to defendants located outside of the United States. Booz Allen Hamilton Holding Corp. v. Shehadi, No. 1:19-cv-00869, 2019 WL 8889997, at *1 (E.D. Va. Sept. 9, 2019).

To effectuate substitute service, a plaintiff may serve "process or notice. . . on the Secretary of the Commonwealth of Virginia. . . who. . . shall be deemed to be the statutory agent of such person." Va. Code § 8.01-329(A); see also Bhutta v. DRM Const. Corp., No. 3:22cv288, 2023 WL 3006591, at *2 (E.D. Va. April 19, 2023). The plaintiff is required to file an affidavit stating: (1) defendant is properly subject to substitute service and (2) "the last known address of the person to be served." Va. Code § 8.01-329(B). Plaintiffs satisfied that requirement.

First, Breakwater argues that Plaintiffs cannot use Virginia's substitute service provision because "Breakwater is not subject to personal jurisdiction under Virginia's long-arm statute." Memo. in Supp. at 5. Furthermore, says Breakwater, Plaintiffs failed to complete the part of the affidavit of service form specifying which subsection of Virginia's long-arm statute provided jurisdiction. Id. 5-6. According to Breakwater,

8

that renders the affidavit defective. Id. Each argument is unavailing.

It is true that this Court does not have jurisdiction pursuant to Virginia's long-arm statute. But, as detailed in a separate Memorandum Opinion, this Court does have personal jurisdiction over Breakwater pursuant to federal law. Substitute service is appropriate "[w]hen the exercise of personal jurisdiction is authorized by [Chapter 9 of the Virginia Code]." Va. Code § 8.01-329(A). Chapter 9 includes not only Virginia's long-arm statute but also Va. Code Ann. § 8.01-330 which states: "A court of this State may exercise jurisdiction on any other basis authorized by law." Therefore, federal law can serve as a basis for personal jurisdiction for substitute service of process.[12]

*Second*, Breakwater argues that the affidavit was materially defective because it failed to provide Breakwater's correct "last known address." Memo. in Supp. at 6-8. The Court would be required to do a more fact intensive analysis to determine if the address Plaintiffs listed qualifies as the "last known

---

[12] Because the long-arm statute was not the basis of jurisdiction, Plaintiffs' failure to check the box on the affidavit identifying the applicable section of the statute cannot be a "material" defect. Va. Polytechnic Inst. & State Univ. v. Prosper Fin., Inc., 732 S.E.2d 246, 249 (Va. 2012) ("We have repeatedly held that any material failure to comply with the terms of the statute authorizing constructive service invalidates the service") (emphasis added).

9

address" of Breakwater. However, it is not necessary to make that finding because Virginia has a curing statute. Under Virginia law, actual notice remedies any defects of service. Va. Code Ann. § 8.01-288 ("Except for process commencing actions for divorce or annulment of marriage or other actions wherein service of process is specifically prescribed by statute, process which has reached the person to whom it is directed within the time prescribed by law, if any, shall be sufficient although not served or accepted as provided in this chapter"). When defendants "have demonstrated that they have actual notice," Virginia's "savings provision" comes into play and resolves all concerns about the effectuation of service. Booz Allen Hamilton Holding Corp., 2019 WL 8889997, at *1. As this Court has explained, the Virginia curing statute

> moots any questions of proper form of service. Provided that defendant has received the process and the action is not one for divorce or annulment, how the process comes to the defendant's attention is no longer of any consequence in Virginia.

Pennington v. McDonnell Douglas Corp, 576 F. Supp. 868, 872 (E.D. Va. 1983); see also Hussain v. ACCA, Inc., No. 1:16cv1323, 2016 WL 6962545, at *4 (E.D. Va. Nov. 29, 2016).

The record in this case shows that Breakwater repeatedly has shown that it is fully aware of the proceedings. In addition, as required by Fed. R. Civ. P. 4(m), Breakwater had

10

notice of the proceedings within 90 days of the Complaint being filed. Plaintiffs first filed the Complaint on April 24, 2019 (ECF No. 1). On June 28, 2019, sixty-five days after the Complaint was filed, Breakwater filed a Motion to Dismiss the case. MOTION TO DISMISS THE COMPLAINT BY DEFENDANTS BLUETECH IRREVOCABLE TRUST AND BREAKWATER HOLDINGS, LLC (ECF No. 65). Thus, Breakwater had notice of the case within the statutorily required timeframe and thus the alleged defect is of no moment.

Service statutes are designed to ensure that "the method chosen will inform the party to be served of the pending litigation." Va. Polytechnic Inst. & State Univ., 732 S.E.2d at 250. In this case, Breakwater was, and is, fully informed about the litigation.

CONCLUSION

For the foregoing reasons, the MOTION TO DISMISS THE COMPLAINT PURSUANT TO RULE 12(b)(5) AS TO DEFENDANT BREAKWATER HOLDINGS, LLC ("the Motion") (ECF No. 403) will be denied.

It is SO ORDERED.

/s/ _____

Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: August _11_, 2023

11