IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

RENEE GALLOWAY,
et al.,

     Plaintiffs,

v.                       Civil Action No. 3:19cv314

JUSTIN MARTORELLO,
et al.,

     Defendants.

## MEMORANDUM OPINION

This matter is before the Court on the MOTION TO DISMISS ("the MOTION") (ECF No. 543) filed by Breakwater Holdings, LLC ("Breakwater"). Breakwater requests the Court to "dismiss all claims against Defendant pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure." Id. For the reasons set forth below, Breakwater's MOTION will be granted in part and denied in part. The MOTION will be granted as to COUNT TWO, denied as to COUNTS ONE, FIVE, TWENTY-EIGHT, and TWENTY-NINE, and denied as moot as to COUNT THIRTY.

## BACKGROUND

**(A) Factual Background[1]**

This case comes out of a long series of litigation concerning Matt Martorello ("Martorello") and his short-term lending

---

[1] These allegations are as set forth in the Complaint and, for the purpose of deciding the MOTION, must be taken as true.

operations.   CLASS ACTION COMPLAINT ("Compl.") ¶ 1, 11 (ECF No. 1).  Martorello allegedly engaged in a so-called "rent-a-tribe" online lending operation to make usurious short-term loans with interest rates in the triple digits. Id. at ¶¶ 1, 6-11.

Breakwater is a limited liability company established under the laws of the Cook Islands, id. at ¶ 61, and, according to the Complaint, is one of several entities allegedly entangled within an elaborate corporate racketeering enterprise established by Martorello. Compl. at ¶¶ 17; 238-246.  Plaintiffs allege that Martorello created Breakwater as a vehicle to help distribute the illegal income of the enterprise to Martorello and his family and to "conceal his ownership interest in the companies involved in the [allegedly illegal lending] scheme and create an additional layer of protection for the illegal money received from consumers." Id.  Breakwater is alleged to be a key component of the alleged racketeering enterprise.   So, it is necessary to explain the structure of that alleged racketeering enterprise and to understand Breakwater's role in it.

The Lac Vieux Desert Band of Lake Superior Chippewa Indians ("the Tribe"), at Martorello's urging, created Red Rock Tribal Lending ("Red Rock"), later rebranded as Big Picture Loans, LLC ("Big Picture"), to issue high-interest short-term loans by way of the internet. Williams v. Big Picture Loans, LLC, 929 F.3d 170,

2

174 (4th Cir. 2019).[2] By linking with the Tribe, Martorello hoped to secure for himself, his entities, and the entire alleged RICO enterprise the protection of the Tribe's sovereign immunity.

On October 25, 2011, Red Rock retained Martorello's company, Bellicose VI ("Bellicose"), as its servicer to "completely" operate the online lending business while using some tribal members as employees. Williams v. Big Picture, No. 3:17cv461, 2020 WL 6784352, at *5 (E.D. Va. Nov. 18, 2020) ("Misrepresentation Opinion"). Under the Servicing Agreement, Bellicose received 98% of all gross proceeds from the online lending operation.[3] On July 31, 2012, with retroactive effect to the start of the Bellicose service agreement, Bellicose assigned the service agreement to SourcePoint VI ("SourcePoint"), its wholly owned subsidiary.[4] As was the case with Bellicose, SourcePoint also received 98% of all net profits from the loan operation. Id. Between June 1, 2013 and December 31, 2013, Breakwater was the parent company of SourcePoint

---

[2] Big Picture was originally a defendant in a related suit but, as it is an arm of the tribe, Big Picture was dismissed. Williams v. Big Picture Loans, LLC, 929 F.3d 170 (4th Cir. 2019).

[3] SERVICING AGREEMENT BETWEEN RED ROCK TRIBAL LENDING, LLC AND BELLICOSE VI, INC at 2.25; 3.5.1 (ECF No. 494-1).

[4] Misrepresentation Opinion at *7; AMENDED & RESTATED SERVICING AGREEMENT BETWEEN RED ROCK TRIBAL LENDING, LLC AND SOURCEPOINT VI, LLC at 2.25; 3.5.1 (ECF No. 494-2).

and Bellicose.   Compl. ¶ 242 (ECF No. 1). On December 31, 2013, Breakwater transferred, for no value, its interest in SourcePoint and Bellicose to Alpha Tax Capital, another Martorello owned company. Id. Then, in January 2016, Martorello amended Evertide's Operating Agreement to transfer to Breakwater all of Eventide's voting interest in Eventide and 59.5% of Eventide's economic shares so that Breakwater received substantial funds from the alleged RICO enterprise.   Id.

From 2011 to 2016, the money received from the alleged illegal loan payments allegedly was run through a complex series of entities from SourcePoint to Bluetech, and then from Bluetech to Martorello and others, including his family members.   Martorello allegedly uses Breakwater to divert 70% of his income from illegal loan repayments to Bluetech which then distributes funds to Martorello's wife and children. Id. at ¶¶ 242-245.

From October 25, 2011 to December 31, 2013, Breakwater received substantial revenue from the enterprise's lending operation.[5] See also Bellicose Capital Corporate Structure at 3

---

[5] The record shows that Bellicose owned 100% of SourcePoint and "all of [SourcePoint's] net profits, net losses, expenses and items of income, gain, loss, and credit" were "allocated" to Bellicose. OPERATING AGREEMENT OF SOURCEPOINT VI, LLC at 1, § IV(A); Amend. A (ECF No. 494-3). Bellicose then distributed 30% of the funds to MBM Services (owned 95% by Martorello and 5% by his brother, Justin Martorello) and 70% to 7X Services. MBM SERVICES, LLC OPERATING AGREEMENT at Article 3.1; 14 (ECF No. 494-7). Breakwater also held

(ECF No. 494-8). On January 1, 2014, Martorello made several alterations to the corporate structure of the alleged racketeering enterprise.[6]

In January 2016, the alleged RICO enterprise went through a general re-structuring. On January 26, 2016, SourcePoint and Bellicose Capital merged into Ascension Technologies, a tribal entity. Before the sale, Martorello had created a new company called Eventide Credit Acquisitions ("Eventide") to facilitate the sale of Bellicose Capital to the Tribe.[7] However, Martorello

---

100% voting interest in Bellicose. OPERATING AGREEMENT OF BELLICOSE VI, LLC at § II(E)-(F), Exhibit A (ECF No. 494-4). 7X Services then distributed 100% of that money to Breakwater which, in turn, then distributed 100% of the money to M. Martorello Irrevocable Trust, later re-named Bluetech. 7X SERVICES OPERATING AGREEMENT at Exhibit A (ECF No. 494-6); OPERATING AGREEMENT OF BREAKWATER HOLDING LLC at Exhibit "A" (ECF No. 494-5); CERTIFICATE OF REGISTRATION UPON CHANGE OF NAME (ECF No. 494-22).

[6] At that point, Bellicose Capital's members were as follows: Kairos Holdings, LLC ("Kairos") (59.5%); Liont, LLC ("Liont") (25.5%); Justin Martorello (10%); Brian McFadden (2%); James Dowd (1.5%); and Simon Liang (1.5%). SCHEDULE A OF THE AMENDED AND RESTATED OPERATING AGREEMENT OF BELLICOSE CAPITAL, LLC (ECF No. 494-11). Bluetech owned 100% of Kairos throughout its existence. Bellicose Capital Corporate Structure at 7-13. Martorello is the sole owner and president of Liont. June 4, 2018 Email from Martorello to Huffstutter RE: Additional Information (ECF No. 494-30); OPERATING AGREEMENT OF LIONT, LLC at 18 (ECF No. 513-9). It appears that, from January 1, 2014 to January 1, 2016, Breakwater had no role in the enterprise.

[7] OPERATING AGREEMENT OF EVENTIDE CREDIT ACQUISITIONS, LLC (ECF No. 494-12).

structured that sale so that he would continue to profit from the online lending enterprise. In particular, so that the Tribe could pay for Bellicose, the Tribe signed a Secured Promissory Note in which it was obliged to pay Eventide between 94-96% of the enterprise's gross revenue up to $300,000,000.00 for seven years.[8] The money then flowed from Eventide through a series of entities and persons. After the sale, Eventide's members were as follows: Breakwater (59.5%); Gallant Capital (25.5%); Justin Martorello (10%); Brian McFadden (2%); James Dowd (1.5%); and Simon Liang (1.5%). Id. at Schedule A.[9] Thus, even after the transfer, it is alleged, with plausible support, that Breakwater continued to derive a significant percentage of income from the alleged racketeering enterprise and then helped to distribute it to Martorello's family, various investors, and others and to conceal Martorello's role in the enterprise and the conspiracy.[10]

---

[8] AGREEMENT AND PLAN OF MERGER BETWEEN LVD TRIBAL ACQUISITIONS COMPANY, LLC AND BELLICOSE CAPITAL, LLC AND EVENTIDE CREDIT ACQUISITIONS, LLC at § 2.7(ECF No. 494-14); SECURED PROMISSORY NOTE at §§ 1.2, 1.3(ECF No. 494-15).

[9] As of July 15, 2015, Eventide's members were as follows: Kairos Holdings, LLC (59.5%); Gallant Capital (25.5%); Justin Martorello (10%); Brian McFadden (2%); James Dowd (1.5%); and Simon Liang (1.5%). Id. at Schedule A. On January 1, 2016, Kairos transferred its 59.6% interest in Eventide to Breakwater. INTEREST TRANSFER AGREEMENT (ECF No. 321-4).

[10] Breakwater FINANCIAL INTEREST DISCLOSURE STATEMENT (ECF No. 63) ("The sole member of Breakwater is Guardian Trust Corporation as

**(B) Procedural Background**

This case has and long and convoluted procedural history. Plaintiffs originally brought twenty-eight counts[11] against Breakwater under state and federal laws. Compl. at 55-82. The Court dismissed, without prejudice, COUNTS SIX through TWENTY-SEVEN in their entirety and COUNTS TWENTY-EIGHT through THIRTY, except as they asserted claims under Virginia law. September 23, 2021 MEMORANDUM ORDER (ECF No. 371).

On October 15, 2021 Breakwater filed a MOTION TO DISMISS THE COMPLAINT PURSUANT TO RULE 12(B)(2) AS TO DEFENDANT BREAKWATER HOLDINGS, LLC (ECF No. 390) (the "Rule 12(b)(2) Motion") and, on October 22, 2021, it filed a MOTION TO DISMISS THE COMPLAINT PURSUANT TO RULE 12(b)(5) AS TO DEFENDANT BREAKWATER HOLDINGS, LLC (ECF No. 403) (the "Rule 12(b)(5) Motion"). On October 22, 2021, Breakwater filed a MOTION TO DISMISS THE COMPLAINT PURSUANT TO RULE 12(b)(6) BY DEFENDANT BREAKWATER HOLDINGS, LLC (ECF No. 409).

On November 3, 2022, the Court ordered the parties to provide supplemental briefing on Breakwater's Rule 12(b)(2) Motion. Nov. 3, 2022 MEMORANDUM ORDER (ECF No. 468). After that briefing was

---

trustee of the Bluetech Irrevocable Trust").

[11] The Complaint denotes the claims as Causes of Action (such as "FIRST CAUSE OF ACTION"). This Memorandum Opinion refers to the claims as Counts (such as "COUNT ONE.")

filed, the Court held an evidentiary hearing on the Rule 12(b)(2) and the Rule 12(b)(5) Motions. Feb. 23, 2023 ORDER (ECF No. 489). On April 6, 2023, "[i]n light of the supplemental briefing and oral argument presented in this case during the hearings on April 4 and 5, 2023," the Court denied Breakwater's 12(b)(6) motion without prejudice as moot. April 6, 2023 ORDER (ECF No. 521).[12] On August 11, 2023, the Court denied Breakwater's Rule 12(b)(2) Motion and its Rule 12(b)(5) Motion. See ECF Nos. 604, 605, 607, 608. On August 14, 2023, the Court also resolved three related discovery disputes—PLAINTIFFS' OBJECTION TO BLUETECH AND BREAKWATER'S STATEMENT OF POSITIONS AND EVIDENTURY [sic] HEARING EXHIBIT LIST (ECF No. 507); MOTION FOR PROTECTIVE ORDER AS TO DEFENDANTS BLUETECH IRREVOCABLE TRUST AND BREAKWATER HOLDINGS, LLC (ECF No. 533); and PLAINTIFFS' MOTION TO COMPEL AND FOR SANCTIONS (ECF No. 545)—and ordered Breakwater to fully participate in discovery. ECF Nos. 609, 610.

Against the foregoing background, the MOTION will be assessed.

---

[12] In that ORDER, the Court ordered that, if Breakwater filed a second motion to dismiss, it "shall explain [its] decision to proceed under Fed. R. of Civ. P. Rule 12(b)(6)." April 6, 2023 ORDER (ECF No. 521). Breakwater has failed to do so. This failure is part of a disturbing pattern of failing to abide by Court ORDERS.

## DISCUSSION

### (A) Legal Framework

Fed. R. Civ. P. 12(b)(6) allows for dismissal for "failure to state a claim upon which relief can be granted." The Supreme Court of the United States has said:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations omitted).

The Court "must accept as true all of the allegations contained in the complaint." Ashcroft, 556 U.S. at 678. However, the Court does not need to accept legal conclusions as true. Id.

A plaintiff's "complaint will not be dismissed as long as he provides sufficient detail about his claim to show that he has a more-than-conceivable chance of success on the merits." Owens v. Baltimore City State's Att'y Office, 767 F.3d 379, 396 (4th Cir. 2014).

**(B) COUNT ONE: Violation of RICO, 18 U.S.C. § 1962(c)**

Plaintiffs allege that Breakwater violated the Racketeer Influence and Corrupt Organizations ("RICO") Act through the "collection of unlawful debt." See 18 U.S.C. § 1962(c). Section 1962(c) reads, in full:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c) (emphasis added). "[U]nlawful debt" is defined as "the business of lending money or a thing of value at a rate usurious under State or Federal law, where the usurious rate is at least twice the enforceable rate." 18 U.S.C. § 1961(6).

To establish a claim under § 1962(c), Plaintiffs must show: "Defendants (1) conducted the affairs of an enterprise (2) through the collection of unlawful debt (3) while employed by or associated with (4) the enterprise engaged in, or the activities of which affect, interstate or foreign commerce." Gibbs v. Stinson, 421 F.Supp.3d 267, 312 (E.D. Va. 2019), aff'd on different grounds sub nom. Gibbs v. Sequoia Cap. Operations, LLC, 966 F.3d 286 (4th Cir. 2020) (quotation marks and citation omitted); see also Salinas v. United States, 552 U.S. 52, 62 (1997) ("The elements predominant

10

in a subsection (c) violation are: (1) the conduct (2) of an enterprise (3) through [the collection of unlawful debt]").

Plaintiffs allege that Breakwater, along with numerous other defendants including (but not limited to) Justin Martorello, Bluetech, Eventide, Big Picture, Ascension and their employees, "associated for the common purpose of profiting off of the collection on unlawful debt by offering and collecting on loans to consumers throughout the United States." Compl. ¶ 353. Plaintiffs allege that the loans made to the Class Members and collected by the enterprise "included interest rates far in excess of twice the enforceable rate in their states." Compl. ¶ 357. Plaintiffs further allege that they were injured by paying the "unlawful and usurious rates of interest on loans made by the Enterprise." Compl. ¶ 358.

Breakwater offers the following arguments in support of the MOTION. First, it argues that Fed. R. Civ. P. 9(b), rather than Fed. R. Civ. P. 8(a), governs the pleading standard for RICO claims;[13] and, under this heightened standard, Breakwater argues that Plaintiffs have not plead the RICO claims with enough specificity. Second, even if the Fed. R. Civ. P. 8(a) standard applies, Breakwater argues that "Plaintiffs have failed to

---

[13] MEMORANDUM IN SUPPORT OF MOTION TO DISMISS THE COMPLAINT PURSUANT TO RULE 12(b)(6) BY DEFENDANT BREAKWATER HOLDINGS, LLC ("Memo. in Supp.") at 4-5 (ECF No. 544).

plausibly allege that their purported injuries were proximately caused by any conduct by Breakwater." Id. at 6 (emphasis removed). Third, Breakwater contends that it did not "conduct or participate" in the affairs of the enterprise. Id. at 8-12 (emphasis removed). Fourth, it argues that RICO cannot be applied to conduct on which Bluetech engaged "abroad" (outside of the United States) because of "the presumption against extraterritoriality." Id. at 12. Fifth, Breakwater argues that "Plaintiffs have failed plausibly to allege that Breakwater joined any conspiracy to violate RICO." Id. at 13-15. Finally, Breakwater argues that the "State-Law Claims Fail to Plausibly Allege that Plaintiffs are Entitled to Relief from Breakwater." Id. at 15-17. Each of these offered arguments will be evaluated in turn.

### (i) Pleading Standard

It is Breakwater's view that the Complaint "alleges claims sounding in fraud" and therefore must satisfy Fed. R. Civ. P. 9(b)'s heightened pleading requirements. Memo. in Supp. at 4. Plaintiffs argue that, because "unlawful debt" is defined in terms of usury and gambling, "Rule 9's pleading requirements are inapplicable."[14]

---

[14] PLAINTIFFS' OPPOSITION TO DEFENDANT BREAKWATER HOLDINGS, LLC'S RULE 12(b)(6) MOTION TO DISMISS ("Response") at 6 (ECF No. 572).

Fed. R. Civ. P. 9(b) requires parties, when "alleging fraud or mistake," to "state with particularity the circumstances constituting fraud or mistake." This is a higher standard than the Fed. R. Civ. P. 8(a)(2) general requirement for "a short and plain statement of the claim showing that the pleader is entitled to relief."

When determining which pleading standard to apply to claims under RICO, courts look to the underlying predicate act(s),[15] because Rule 9(b)'s standard applies only to RICO claims sounding in fraud. WW, LLC v. Coffee Beanery, Ltd., No. WMN-05-3360, 2012 WL 3728184, at *13 (D. Md. Aug. 27, 2012) ("if the predicate act for a RICO claim is an act of fraud, then the allegation regarding that fraud must be pled pursuant to Rule 9(b)"). "The non-fraud elements of a RICO claim are assessed using Rule 8, not Rule 9(b)." Mao v. Global Trust Management, LLC, No. 4:21CV65, 2022 WL 989012, at *11 (E.D. Va. March 31, 2022) (gathering cases).

Here, RICO defines "unlawful debt" in terms of "gambling activity" or "lending money. . . at a rate usurious under State or Federal law," 18 U.S.C. § 1961(6), not in terms of fraud. Therefore, the Rule 9(b) standard does not apply. Mao, 2022 WL 989012, at *11. Plaintiffs here are only required to have made "a

---

[15] Proctor v. Metropolitan Money Store Corp., 645 F.Supp.2d 464, 477 (D. Md. 2009).

short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

### (ii) Injury Cause

Breakwater next argues that "Plaintiffs have failed to plausibly allege that their purported injuries were proximately caused by any conduct of Bluetech." Memo. in Supp. at 5 (emphasis removed). Breakwater claims that the Plaintiffs have "failed to identify any 'conduct' by Breakwater relevant to the RICO claims." Id. at 7. Plaintiffs, in turn, argue that "Plaintiffs and RICO Class members were injured as a direct result of Defendants' violations of 18 U.S.C. § 1962(c) by, among other things, the payment of unlawful and usurious rates of interest on loans made by the Enterprise." Compl. ¶ 358. Therefore, so they say, "the direct connection between Bluetech's misconduct and Plaintiffs' injuries is straightforward: Bluetech financed, oversaw, and had formal control over the scheme and worked together with the other members of the enterprise to facilitate it." Response at 7.

RICO provides a private cause of action for "[a]ny person injured in his business or property by reason of a violation of [18 U.S.C. § 1962]." 18 U.S.C. § 1964(c) (emphasis added). To prove an injury "by reason of a violation," Plaintiffs are "required to show that a RICO predicate offense not only was a 'but for' cause of [their] injury, but was the proximate cause as

14

well." Hemi Group, LLC v. City of New York, 130 S.Ct. 983, 989 (2010) (quotation marks and citation omitted) (emphasis added). In the RICO context, "proximate cause" requires "some direct relation between the injury asserted and the injurious conduct alleged." Id. (quotation marks and citation omitted).[16] When evaluating RICO proximate causation, "the central question. . . is whether the alleged violation led *directly* to the plaintiff's injuries." Slay's Restoration, LLC v. Wright Nat'l Flood Ins. Co., 884 F.3d 489, 493 (4th Cir. 2018) (quoting Anza v. Ideal Steel Supply Corp., 547 U.S. 451, 461 (2006)). In assessing the "direct relationship requirement," the Supreme Court of the United States has directed courts to consider "whether better situated plaintiffs would have an incentive to sue." Hemi Group, LLC, 130 S.Ct. at 990. While keeping in mind that proximate cause "is a flexible concept that does not lend itself to a black-letter rule that will dictate the result in every case,"[17] the Fourth Circuit recently articulated two key guiding principles:

> RICO proximate causation is lacking when (1) there is a "more direct victim" from whom (or intervening factor from which) the plaintiff's injuries derive, or (2) the alleged RICO predicate violation is "too distinct" or

---

[16] Unlike common law proximate cause, RICO proximate cause does not evaluate the foreseeability of the harm. Slay's Restoration, LLC v. Wright Nat'l Flood Ins. Co., 884 F.3d 489, 493 (4th Cir. 2018).

[17] Bridge v. Phoenix Bond & Indemnity Co., 553 U.S. 639, 654 (2008) (citation and quotation marks omitted).

> <u>logically unrelated</u> from the cause of the plaintiff's injury.

<u>Albert v. Global Tel*Link</u>, 68 F.4th 906, 911 (4th Cir. 2023).

Here, Plaintiffs are the "direct victims" of the RICO enterprise. By making "payment[s] of unlawful and usurious rates of interest on loans made by the Enterprise," Plaintiffs suffered a direct, material economic injury. Compl. ¶ 358. Breakwater has identified no individuals more directly affected, or more directly harmed, by the alleged RICO enterprise than the Plaintiffs and the proposed class members.

To determine if the Plaintiffs' alleged injuries (the payment of usurious interest rates) are logically related to Breakwater's alleged actions in the course of the alleged RICO conspiracy, it is first necessary to define what those actions are said to be. Breakwater argues that "[t]here is no allegation that Breakwater actually *did* anything." Memo. in Supp. at 11 (emphasis in original). Breakwater seeks to portray its role as a solely passive one. Breakwater, so it says, merely existed to own interests in other defendants in the enterprise and received money (payments from the alleged unlawful debt). Memo. in Supp. at 1-2 (<u>stating</u> Breakwater is "alleged. . . to have indirectly received monies from [the enterprise]"). It is true, as Breakwater admits, that it received money generated from the alleged illegal loans. But,

16

receiving the money is not all that Breakwater is alleged to have done.

For example, the Complaint alleges that Breakwater actively engaged in the conspiracy's goal of issuing high-interest loans by concealing Martorello's ownership interest in the companies involved in the scheme [Enterprise] and by owning and controlling SourcePoint VI and Bellicose VI and their loan-making activities. Breakwater also allegedly held and exercised Martorello's ownership interest and received almost 60% of Eventide's profits (which came from payments on the unlawful loans). Also, it is alleged that Breakwater served as a conduit of funds to Bluetech so that those funds could be distributed to Martorello's family. Compl. ¶¶ 242 and 244. In sum, the Complaint alleges that Breakwater plays much more than a passive role in the scheme; it is alleged to play a critical role in shielding the allegedly illegal funds and in disbursing them from the alleged RICO enterprise entities to Martorello and his family.

That conduct (if proved) enabled the concealment and distribution of the profits from the scheme and is logically related to Plaintiffs' injuries. When making out a RICO claim for the collection of unlawful debts, "Plaintiffs 'need not argue that each defendant individually collected the debt' to adequately allege proximate cause." Blackburn v. A.C. Israel Enterprises, No.

17

3:22cv146, 2023 WL 4710884, at *18 (E.D. Va. July 24, 2023) (quoting Duggan v. Martorello, 596 F.Supp.3d 158, 191 n.12 (D. Mass. 2022)). Instead, the Court asks if the defendant "directly facilitated" the lending scheme. Gibbs v. Elevate Credit, No. 3:20cv632, 2021 WL 4851066, at *17 (E.D. Va. Oct. 17, 2021). "Facilitate" is defined by Merriam-Webster as "to make easier: help bring about." Here, by allegedly serving as, what Martorello intended to be, a safe repository for, and then a disburser of, the alleged RICO enterprise's allegedly ill-gotten gains, Breakwater was essential to the ability of the enterprise to continue and to achieve its ultimate objective: to get the usurious (and thus illegal) loan payments to Martorello and his family in a manner that assured both deliver and concealment of that money.

So, when examined carefully, the Complaint has properly and plausibly alleged that Breakwater's actions proximately caused the injuries that Plaintiffs claim to have sustained.

## (iii)    Presumption Against Extraterritoriality and Conduct or Participate

It is necessary to combine the discussion of two arguments raised by Breakwater, namely (1) that Breakwater, so it claims, did not conduct or participate in the affairs of the alleged RICO enterprise and (2) that, when evaluating that question, the Court may not consider any actions taken by Breakwater outside of the United States. Memo. in Supp. at 8, 12.

First, the presumption against extraterritoriality does not prohibit the Court from considering Breakwater's overseas conduct. To pursue a private cause of action under RICO, private plaintiffs "must allege and prove a *domestic* injury." RJR Nabisco, Inc v. European Community, 136 S.Ct. 2090, 2106 (2016). To determine if an injury is domestic, courts conduct a "context-specific inquiry that turns largely on the particular facts alleged in the complaint." Yegiazaryan v. Smagin, 143 S.Ct. 1900, 1909 (2023). In that inquiry, courts "should look to the circumstances surrounding the alleged injury," including "looking to the nature of the alleged injury, the racketeering activity that directly caused it, and the injurious aims and effects of that activity." Id.

The circumstances surrounding Plaintiffs' alleged injuries support a finding that they were domestic in nature. The Court has already found that the alleged RICO lending enterprise "was anchored in the United States" and that it "targeted its loans to individual located within the United States and not to other jurisdictions." August 11, 2023 MEMORANDUM OPINION ("Breakwater Personal Jurisdiction Opinion") at 16 (ECF No. 607). Americans took out, and made the payments on, the assertedly unlawful loans from the United States and those payments were directed, through a convoluted path, to Breakwater. Thus, because Plaintiffs' suffered a domestic injury, the presumption against

19

extraterritoriality does not prohibit the Court from considering conduct that occurred outside the United States or from holding Breakwater accountable if it is found that Breakwater participated in the affairs of the alleged RICO enterprise.

Having determined that it is proper to consider all of Breakwater's actions, it is time to turn to the core question: have Plaintiffs properly plead that Breakwater violated 18 U.S.C. § 1962(c)?  For the reasons that follow, they have not.

Section 1962(c) requires that a defendant "conduct[ed] or participate[d], directly or indirectly, in the conduct of [the] enterprise's affairs." 18 U.S.C. § 1962(c). To satisfy this element, Plaintiffs must allege that Breakwater "participated in the operation or management of the enterprise itself." Reves v. Ernst & Young, 507 U.S. 170, 183 (1993). Breakwater need not have a formal position in the enterprise but it must have "*some* part in directing the enterprise's affairs is required." Id. at 179.

According to the Complaint, Breakwater's role in the alleged unlawful lending scheme conducted by the alleged RICO enterprise including owning SourcePoint VI and Bellicose VI which made and serviced the unlawful loans.  Breakwater also is alleged to have functioned so as to conceal Martorello's interest in the unlawful lending scheme.  Breakwater also held and exercised Martorello's interest in Eventide, and Breakwater thereby received 59.5% of the

20

profits of Eventide (the illegal loan proceeds) and then helped get the funds to Martorello through Bluetech.  Compl. ¶¶ 17, 61, 247. In doing so, Breakwater was "participating" in the enterprise. Compl. ¶ 355. But, the Complaint does not allege that Breakwater directed, directly or indirectly, the RICO enterprise's affairs as is required for liability under § 1962(c). While there is no doubt that, if proved, Breakwater's alleged role in the enterprise was critical to the success of the enterprise, the Complaint does not allege that Breakwater directed the enterprise's affairs.

However, there has been much discovery in related cases and some in this case since the Complaint was filed.  And, the Plaintiffs' briefs tell that they have evidence showing that Breakwater participated in directing the affairs of the enterprise.  If so, they can amend the Complaint. Therefore, COUNT ONE of the Complaint will be dismissed without prejudice as to Breakwater, and with leave to amend.

**(C) COUNT TWO: Violation of RICO, 18 U.S.C. § 1962(d)**

Breakwater seeks dismissal of COUNT TWO, arguing that "Plaintiffs have alleged bare legal conclusions, but no facts specifying the formation or maintenance of any conspiratorial agreement involving Breakwater." Memo. in Supp. at 14 (ECF No. 544). Plaintiffs argue that they have already properly alleged that "Matt Martorello, Justin Martorello, Rebecca Martorello,

21

Eventide, the Tribe, and others committed substantive violations of RICO" and "that Breakwater knew about and facilitated the scheme." Response at 15 (ECF No. 572).

Section 1962(d) provides that:

> It shall be unlawful for any person to conspire to violate any of the provisions of subsection . . . (c) of this section.

Therefore, "to prove a RICO conspiracy, the Plaintiffs must establish: (1) that <u>two or more people agreed to commit a substantive RICO offense</u>; and (2) that the defendant <u>knew of and agreed to the overall objective</u> of the RICO offense." <u>Blackburn v. A.C. Israel Enterprises</u>, No. 3:22cv146, 2023 WL 4710884, at *32 (E.D. Va. July 24, 2023) (<u>quoting</u> <u>Solomon v. Am. Web Loan</u>, No. 4:17cv145, 2019 WL 1320790, at *11 (E.D. Va. March 22, 2019)) (emphasis added); <u>see also</u> <u>Mao v. Global Trust Management, LLC</u>, No. 4:21CV65, 2022 WL 989012, at *12 (E.D. Va. March 31, 2022) (citation and quotation marks omitted). RICO conspiracy does not require "some overt act or specific act" and is therefore "even more comprehensive" than the general conspiracy statute. <u>Salinas v. United States</u>, 522 U.S. 52, 63 (1997). "The partners in the criminal plan must agree to pursue the same criminal objective," "even if a conspirator does not agree to commit or facilitate each and every part of the substantive offense." <u>Id.</u> at 63.

22

The Court already has found on multiple occasions that Plaintiffs have adequately alleged "that two or more people agreed to commit a substantive RICO offense." See ECF No. 375 (denying Justin Martorello's motion to dismiss); ECF No. 377 (denying Eventide's motion to dismiss); ECF No. 380 (denying Rebecca Martorello's motion to dismiss); Breakwater Personal Jurisdiction Opinion at 30. Therefore, the first element of the § 1962(d) claim is adequately pled.

Breakwater next asserts that Plaintiffs "have not alleged that Breakwater agreed to anything." Memo. in Supp. at 15 (ECF No. 544). It is true that the Complaint does not allege any formal agreement between Breakwater and the other members of the conspiracy.  But, proof of a formal agreement is not required because "[p]roof of such an agreement 'may be established solely by circumstantial evidence.'" Blackburn, 2023 WL 4710884, at *32 (quoting Solomon, 2019 WL 1320790, at *11)).

The Plaintiffs adequately allege that, from its very inception, Breakwater was intimately entwined with the conspiracy and its sole reason for existence was to contribute to the conspiracy's success. Compl. ¶¶ 17, 61. The Court already has found that Plaintiffs adequately have alleged that Breakwater served a key role in the conspiracy "by serving as a conduit for the scheme's allegedly ill-gotten funds" and as disburser of those

23

funds. *Breakwater Personal Jurisdiction Opinion* at 30 (quotation marks and citation omitted) (ECF No. 607). Indeed, as the Court has also already held, Plaintiffs have amply plead that "Breakwater shared in the conspiracy's 'common plan' to collect, retain, and redistribute the profits from the RICO enterprise." *Breakwater Personal Jurisdiction Opinion* at 30 (ECF No. 607). That is sufficient.

For the foregoing reasons, Breakwater's MOTION to dismiss COUNT TWO of the Complaint is denied.

**(D) COUNT FIVE: Violation of Virginia Usury Laws, Va. Code § 6.2-303**

Under Virginia law, "no contract shall be made for the payment of interest on a loan at a rate that exceeds 12 percent per year." Va. Code § 6.2-303(A).[18] Any contract made in violation of this provision "is void" and "no person shall have the right to collect, receive, or retain any principal, interest, feeds, or other charges in connection with the contract." Va. Code § 6.2-303(F). In the event that interest is paid on a usurious loan, "the person paying may bring an action. . . to recover from the person taking or receiving such payments." Va. Code § 6.2-305(A).[19] Plaintiffs are

_____

[18] The statute sets forth various exceptions, none of which are applicable here. Va. Code § 6.2-303(B).

[19] "Person" is defined as "any individual, corporation, partnership, association, cooperative, limited liability company,

entitled to recover: (1) "The total amount of the interest paid to such person in excess of that permitted by the applicable statute"; (2) "Twice the total amount of interest paid to such person during the two years immediately preceding the date of the filing of the action"; and (3) "Court costs and reasonable attorney fees." Va. Code § 6.2-305(A)(1)-(3).

Plaintiffs allege that loans were made to Virginia consumers with "annual interest rate[s] well in excess of 12%," Compl. ¶ 379, and that the interest from those loans was then funneled through Breakwater to Bluetech and then to Martorello. Compl. ¶ 244. As a result, so they say, the Virginia Plaintiffs "are entitled to recover all amounts received on these void loans, as well as twice the amount of usurious interest repaid" from the defendants, including Bluetech. Compl. ¶ 380.

Breakwater argues that it cannot be held liable because it never "lent money or received repayment in connection with any loan." Memo. in Supp. at 15-16 (ECF No. 544). Moreover, says Breakwater, it "is not a party to any of the loan agreements." Id.

Breakwater's arguments fail because Plaintiffs have properly alleged that Breakwater is an entity "receiving" usurious payments. Va. Code § 6.2-305(A). As the Court already has found

---

trust, joint venture, government, political subdivision, or other legal or commercial entity." Va. Code Ann. § 6.2-100.

"Breakwater received significant sums of money from [the alleged] RICO enterprise." Breakwater Personal Jurisdiction Opinion at 16 (ECF No. 607). Breakwater "drew a continual stream of revenue from United States based loans," including loans made to Virginia consumers. Id.

Furthermore, it is immaterial that Breakwater *itself* did not collect the loans as long as it eventually "received the payments, even if not directly." Williams v. Big Picture Loans, LLC, No. 3:17-cv-461, 2023 WL 4473335, at *3 (E.D. Va. July 11, 2023). "[A] plain reading of § 6.2-305 plausibly permits recovery against individuals who take and receive payments on usurious loans, even if those payments pass through corporate entities." Hengle v. Asner, 433 F.Supp.3d 825, 896 (E.D. Va. 2020), affirmed on diff. grounds sub nom Hengle v. Treppa, 19 F.4th 324 (4th Cir. 2021).

Because the allegedly illegally obtained revenue from the loans ended up, by design and with knowledge of all concerned, in Breakwater's coffers, the Court will deny Breakwater's MOTION to dismiss COUNT FIVE.

**(E) COUNT TWENTY-EIGHT: Unjust Enrichment**

Plaintiffs allege that Breakwater has been "unjustly enriched as a result of charging and collecting illegal, usurious interest rates from residents of Virginia" and "it would be unjust for [Breakwater] to retain the benefits attained by their actions."

26

Compl. ¶¶ 520-21.

The doctrine of unjust enrichment "arises from the simple principle that one person may not enrich himself unjustly at the expense of another." James G. Davis Const. Corp. v. FTJ, Inc., 841 S.E.2d 642, 647 (Va. 2020). Virginia has

> adopted a three-part test to govern unjust enrichment claims: (1) the plaintiff conferred a benefit on the defendant; (2) the defendant knew of the benefit and should reasonably have expected to repay the plaintiff; and (3) the defendant accepted or retained the benefit without paying for its value.

Id. at 650 (emphasis added).

As its only argument for dismissal of this count, Breakwater says that "there are no facts demonstrating that any conduct by Breakwater is a but-for or proximate cause of Plaintiffs' alleged injuries." Memo. in Supp. at 16 (ECF No. 544). However, neither but-for nor proximate cause is one of the elements of a claim for unjust enrichment under Virginia law. Even if it was an element or lack thereof was a defense, the Complaint adequately alleges that Breakwater's actions did cause Plaintiffs' injuries. See supra at § 2(B)(i).

The Court will deny Breakwater's MOTION to dismiss COUNT TWENTY-EIGHT.

## (F) COUNT TWENTY-NINE: Civil Conspiracy

Bluetech argues that "Plaintiff [sic] cannot state a claim for common law conspiracy for the same reasons they cannot state

27

a RICO conspiracy claim." DEFENDANT BREAKWATER HOLDINGS, LLC'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS PURSUANT TO RULE 12(b)(6) ("Reply") at 11 (ECF No. 594). Namely, Breakwater contends that "Plaintiffs fail to allege civil conspiracy, as there are no facts demonstrating 'concerted action' on the part of Breakwater with respect to the alleged lending." Memo. in Supp. at 16 (ECF No. 544) (citing Kayes v. Keyser, 72 Va. Cir. 549 (2007)).

Courts have distilled the elements of a civil conspiracy claim under Virginia law as "(i) an agreement between two or more persons (ii) to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means, which (iii) results in damage to plaintiff." Cox v. MAG Mutual Ins. Co., No. 3:14-cv-377, 2015 WL 1640513, at *6 (E.D. Va. April 9, 2015) (quoting Firestone v. Wiley, 485 F.Supp.2d 694, 703 (E.D. Va. 2007)) (emphasis added); see also Response at 31 (ECF No. 572) (same); Reply at 11 (same).

As explained above in § 2(C), Plaintiffs have properly plead that there was an agreement between two or more persons for the purpose of accomplishing an unlawful purpose (the collection of unlawful debts). In addition, as explained above in § 2(B)(i), Plaintiffs suffered economic damage as a result of the enterprise. Therefore, all the requisite elements are properly plead.

For these reasons, Breakwater's MOTION to dismiss COUNT TWENTY-NINE of the Complaint is denied.

**(G)  COUNT THIRTY: Aiding and Abetting**

In their Response, Plaintiffs informed the Court that "they no longer intend to pursue [this claim] and ask that it be dismissed without prejudice." Response at 31 (ECF No. 572). Breakwater requests that this claim be dismissed *with* prejudice. Reply at 3 (ECF No. 594). The Court will grant Plaintiffs' request and dismiss COUNT THIRTY without prejudice.

**CONCLUSION**

For the reasons set forth above, the MOTION TO DISMISS will be granted in part and denied in part. The MOTION will be granted as to COUNT ONE, without prejudice and leave to amend; denied as to COUNTS TWO, FIVE, TWENTY-EIGHT, and TWENTY-NINE; and denied as moot as to COUNT THIRTY.

It is SO ORDERED.

/s/

Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: October 5, 2023