IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| RENEE GALLOWAY, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> JUSTIN MARTORELLO, *et al.*, <br><br> Defendants. | Case No. 3:19-cv-00314-REP <br><br> **REDACTED VERSION** |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO REPATRIATE FOREIGN ASSETS AND FOR AN EVIDENTIARY HEARING**

This case stems from an illegal enterprise in which Defendants conspired to create, financially supported, directed, and reaped the benefits of a nationwide lending operation that offered thousands of triple-digit, high-interest loans to vulnerable consumers in a flagrant violation of state usury laws. Understanding the obvious illegality of their scheme, Defendants and the mastermind of the operation, Matt Martorello, clothed their enterprise behind layers of corporate shell companies and a Native American tribe to which neither Martorello nor Defendants have any lineage, in an attempt to claim tribal sovereign immunity and evade state regulations. This Court, like many others, has already rejected this attempt to evade the law, finding Martorello liable for nearly identical RICO violations to those lodged here and awarding a judgment of over $40 million against him. *See Williams v. Martorello*, No. 3:17-cv-461, ECF No. 1407 (E.D. Va. Sept. 22, 2023).

Now, Plaintiffs, on behalf of similarly situated consumers, seek relief from Defendants, whom discovery in the *Williams* litigation revealed were either officers and/or shareholders of the lending enterprise (Defendants Justin Martorello, Brian McFadden, James Dowd, and Simon Liang (the "Officer Defendants")); knowing investors in the enterprise (Brian Jedwab, Amlaur

1

Resources, Columbia Pipe & Supply Co., Jeremy Davis, Timothy Arenberg, Terrance Arenberg, DTA Trinity, Wealth Transfer Trust, and DMA Trinity Transfer Trust (the "Investor Defendants")); or the primary shell entities behind the enterprise, which are or were each wholly owned and controlled by Matt Martorello (Kairos Holdings, LLC; Breakwater Holdings, LLC; Gallant Capital, LLC; Liont, LLC, and Bluetech Irrevocable Trust (the "Martorello Shell Defendants").

As this case and the related *Williams* litigation have unfolded, however, including with the recent issuance of a judgment against Matt Martorello, Plaintiffs have learned that Matt Martorello and Defendants are attempting to evade not only legal liability but also any legal *responsibility* for their conduct by moving assets held in Matt Martorello's primary overseas trust in the Cook Islands, Defendant Bluetech Irrevocable Trust ("Bluetech Trust"), to other overseas trusts so that they can avoid payment on the *Williams* judgment and any other judgments issued in this and related litigation. Indeed, despite ███████████████████████████████████, Defendant Bluetech Trust has now filed a notice of its termination (ECF No. 616), which Plaintiffs understand from the Trust documents means that the assets have now been moved to a second trust, Capstone Irrevocable Trust ("Capstone Trust"), organized under the laws of Nevis. Bluetech Trust conveniently filed this termination notice only a day before its Rule 30(b)(6) deposition on October 11, 2023, at which no representative of the Trust ever appeared, avoiding the obligation to answer questions under oath about the location of the Trust's assets.

What has resulted is a clear attempt to force Plaintiffs in both this and the *Williams* litigation into a never-ending game of whack-a-mole, pursuing Matt Martorello's assets held in the Bluetech Trust through multiple layers of overseas trusts and accounts beyond the jurisdiction of any U.S. court to frustrate Plaintiffs' ability to recover in this or any other case. In Matt

2

Martorello's and Bluetech Trust's view, this renders them all but immune from any actual liability for their brazen scheme. They keep their unjust profits, while Plaintiffs—mostly impoverished consumers forced into taking predatory, low-dollar loans—languish with no redress despite the Court's findings of liability.

Despite their obvious objective, however, the law does not allow Matt Martorello or Bluetech Trust to evade responsibility for their unlawful actions. As this Court has already observed, so-called "asset protection" trusts such as Bluetech Trust are "nothing more than a euphemism for evasion." *Galloway v. Martorello*, No. 3:19-cv-314, 2023 WL 5229231, at \*11 (E.D. Va. Aug. 14, 2023). Courts have responded to these evasive tactics by ordering defendants to repatriate the overseas assets on pain of contempt. Indeed, the Ninth Circuit has affirmed a finding of contempt against defendants who refused to repatriate assets held, as here, in Cook Islands trusts. *See FTC v. Affordable Media*, 179 F.3d 1228, 1239-40 (9th Cir. 1999).

The same reasoning applies here. Matt Martorello, with the aide and assistance of Bluetech Trust, cannot shift his assets overseas to avoid a multi-million-dollar judgment against him. Nor can Bluetech Trust avoid its own liability for its participation in the lending scheme by moving trust assets into a blackhole of overseas accounts. Plaintiffs, through counsel, therefore respectfully request that the Court order Bluetech Trust, on pain of contempt, to repatriate the assets held in the Trust, or any other similar trust or overseas account, so that those assets may be used in satisfaction of the *Williams* judgment, as well as any eventual judgment in this case. Further, given the limited information provided by Bluetech Trust and its wholly owned subsidiary Breakwater Holding LLC (now BWH Texas, LLC)[1] regarding the nature, extent, and location of

---

[1] Although BWH's deficient discovery responses, in contravention of this Court's orders, have necessitated an evidentiary hearing, this Motion seeks to compel only Bluetech Trust and its representatives to appear for the hearing and to repatriate any overseas assets.

3

Martorello's assets, Plaintiffs request that the Court hold an evidentiary hearing so that Bluetech Trust can answer questions under oath regarding these issues. Such relief is necessary to effectuate the Court's judgment in *Williams* and to preserve Plaintiffs' right to recovery in this case.

I. **BACKGROUND**

    A. **Matt Martorello Establishes a Lending Enterprise in which Defendants are the Primary Participants and Funders.**

As the Court is now familiar, this case stems from an illegal lending enterprise created and operated by Matt Martorello, with the active participation and support of Defendants. As part of the enterprise, beginning in 2011, Matt Martorello entered a joint venture with the Lac Vieux Desert Band of Lake Superior Chippewa Indians ("LVD")—a Native American tribe to which Matt Martorello and Defendants have no lineage—to offer triple-digit interest loans to consumers nationwide. Martorello intentionally partnered with the LVD in a now-debunked attempt to shield the blatantly usurious lending scheme under the tribe's laws and sovereign immunity.

Under his 2011 agreement with the LVD, Matt Martorello's wholly owned company, Bellicose VI, Inc., agreed to provide "investment and capital management services, management, operations and marketing consulting," as well as "analytic services," to "increase the profitability" of the tribal lending company, Red Rock Tribal Cash, LLC—a name Matt Martorello chose. (Ex. 1 at 026260; Ex. 2 at 0000681.) The Officer Defendants were officers and shareholders of both Bellicose VI and its successor, Bellicose Capital. By Matt Martorello's design, the tribal managers of Red Rock were merely figureheads, leaving the decision-making to Matt Martorello and the Officer Defendants. (Ex. 3.) Indeed, the 2011 Servicing Agreement specified that Bellicose would be charged with the "[s]creening of and selecting service providers and lenders, and negotiating agreements with such service providers and lenders on behalf of [Red Rock] on such terms and conditions as [Bellicose] may reasonably determine to be appropriate[,]" and preparation of

4

"suggested practices and recommendations" regarding "operations of" Red Rock[.]"  (Ex. 1 at 026267.)  The Servicing Agreement also allowed Bellicose (and, thus, the Officer Defendants) to, among other key decisions: (1) enter contracts in Red Rock's name; (2) collect all revenue on Red Rock's behalf; (3) sweep Red Rock's bank accounts; and (4) transfer cash from Red Rock's accounts to Bellicose without authorization from Red Rock.  (*Id*. at 026265-70.)

By claiming a central role in the lending operation, Bellicose (and, in turn, Matt Martorello and the Officer Defendants) also claimed 98% of the gross income collected on Red Rock loans, leaving the LVD with only the remaining 2% of gross revenue.  (*Id.* at 026265.)  Out of the 2% the LVD retained, moreover, Matt Martorello required the tribe to both (a) pay 50% of retained revenue as a "brokerage fee" to a company owned by Matt Martorello's business partner, Robert Rosette, and (b) reimburse the lending operation's costs.  (*Id.*)  Matt Martorello later amended the brokerage fee arrangement to a flat fee of over $900,000.00, while maintaining the same revenue sharing formula and naming Bellicose's wholly owned subsidiary, SourcePoint VI, LLC, as the servicer of the loans.  (Ex. 4 at 003474.)  ███████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████ (Ex. 5.)

### B. Matt Martorello Intentionally Restructured the Lending Operation to Conceal His and Defendants' Involvement.

As early as 2012, Matt Martorello questioned how the lending operations would avoid regulation by state attorneys general, many of whom had started to crack down on similar lending operations and had sent cease-and-desist letters to Red Rock.  (Ex. 6 at 038990-038991.)  In response, Matt Martorello began e-mailing Rosette about restructuring the arrangement to reduce Matt Martorello's liability, as well as the liability of Defendants, writing: "Let's zero in asap on minimizing my risk for being individually liable like [Colorado] just successfully did to Butch

5

[W]ebb." (Ex. 7 at 048497.)

This desire to restructure only compounded after the New York Department of Financial Services ("NYDFS") issued a cease-and-desist letter to several tribal lending operations, including Red Rock, in August 2013.[2] The tribal lending operations, including Red Rock, responded to the letter by suing NYDFS, arguing that the operations were not subject to state usury laws as they constituted on-reservation activity protected by the tribes' sovereign immunity. *See generally Otoe-Missouria Tribe v. N.Y. Dep't of Fin. Servs.*, 974 F. Supp. 2d 353, 361 (S.D.N.Y. Sept. 2013). The Southern District of New York rejected these arguments, finding that the lending operations constituted off-reservation activity subject to non-discriminatory state regulation. *See id.* Two days after the district court's decision, Matt Martorello wrote that the decision "presents a significant potential liability for [Bellicose] and we do not believe that we should service any new New York loans." (Ex. 8 at 06304-5.)

Within two weeks, Matt Martorello proposed a restructuring plan under which he would transfer 51% ownership of Bellicose's equity interest in SourcePoint to the LVD in an attempt to "provide all entities sovereign immunity." (Ex. 9.) Matt Martorello's trust, Defendant Bluetech Trust, would retain the other 49% interest and would retain all profit interests until "month 49." *Id.* Matt Martorello also proposed retaining his and the Officer Defendants' management positions as decision-makers for the lending operation. (Ex. 10 at 052247.) When the LVD did not move quickly to adopt Matt Martorello's proposed restructuring, he began pushing the LVD to rebrand Red Rock under a new name, Big Picture Loans, arguing that Red Rock "ha[d] been blacklisted"

---

[2] *See*, *e.g.*, The Official Website of New York State, Press Room, *Cuomo Administration Demands 35 Companies Cease and Desist Offering Illegal Online Payday Loans That Harm New York Consumers* (Aug. 6, 2013), *available at* https://www.governor.ny.gov/news/cuomo-administration-demands-35-companies-cease-and-desist-offering-illegal-online-payday-loans.

as a company by the New York litigation. (Ex. 11 at 058409.) To further pressure the LVD, Matt Martorello also began threatening to sell the rebranded Big Picture Loans to another tribe. (Ex. 12 at 048541.)

While the pressure on Matt Martorello and Defendants to restructure mounted, in October 2014, the Second Circuit issued an opinion affirming the district court's decision in *Otoe-Missouria* and finding, among other damaging holdings, that "New York's usury laws apply to all lenders, not just tribal lenders[.]" *Otoe-Missouria Tribe of Indians v. New York State Dep't of Fin. Servs.*, 769 F.3d 105, 117 (2d Cir. 2014). In light of this decision, the LVD ultimately agreed to restructure the lending operations. (Ex. 13 at 001130.)

Although ostensibly selling Bellicose's successor, Bellicose Capital,[3] and SourcePoint to the LVD as part of the restructuring, Matt Martorello ensured that he retained management control over the lending operation. (Ex. 14-21.) Under Matt Martorello's restructuring plan, he sold Bellicose Capital and its subsidiary companies to the LVD in return for a promissory note worth $300,000,000.00, payable to Martorello's company, Defendant Eventide Credit Acquisitions, LLC. (Ex. 21 at 000100.) The LVD also agreed to a Delegation of Authority Policy under which Defendant Brian McFadden—president of the new servicing company, Ascension, whom Matt Martorello selected—had the sole authority to: (1) handle Ascension's "strategic direction, goals and targets," (2) execute documents on behalf of Ascension, (3) open and maintain bank accounts, (4) adopt employee benefit plans and programs, and (5) handle "all matters necessary for the day to day management of Ascension." (Ex. 22 at LVD-DEF00002882 (§ 1.4(a)-(e)).) By contrast, the only matters designated to the tribal co-managers were: (1) approval of contracts in excess of

---

[3] After the sale of Bellicose Capital to the LVD, the Officer Defendants each served as officers of Ascension—the new servicing company—and were also shareholders of Eventide.

7

$100,000 in a calendar year, (2) appointment of the president, and (3) approval of any "new major employee benefit plans." (*Id*. at LVD-DEF00002881 (§ 1.2(a)-(c)).).

Even while purporting to give the LVD control over the appointment of the lending operation's president, moreover, in a separate "Intratribal Servicing Agreement," the LVD agreed that it could not replace Matt Martorello's chosen president, McFadden, without permission from Martorello's company, Eventide. (Ex. 23.) The Servicing Agreement also preserved Ascension's position as the sole servicer of Big Picture and gave Ascension (and, thus, the Officer Defendants) control of Big Picture's finances. (Ex. 24.) And to seal the deal, the LVD could not amend the Intratribal Servicing Agreement without the permission of Eventide. (Ex. 23.)

Matt Martorello (through the Martorello Shell Defendants) and the other Defendants also continued to reap significant profits from the lending enterprise, even after the restructuring. Under the terms of the $300 million promissory note issued to Eventide, the LVD made monthly payments to Eventide (and thus Martorello and the Officer Defendants) of all remaining revenue after subtracting: (1) the LVD's 2% revenue share; (2) another 2% reinvested in growing the loan portfolio; and (3) operating costs. (Ex. 25 at 000129-130.) Between March 2016 and April 2017, alone, Eventide ▮▮▮▮▮▮▮▮▮▮ and distributed a total amount of ▮▮▮▮▮, including a distribution of ▮▮▮▮▮ to Matt Martorello's wholly owned subsidiary, Gallant Capital, and ▮▮▮▮▮ to Breakwater Holdings, LLC (which was directed to the Bluetech Trust as explained below). (Ex. 26.)

What resulted was a lending operation that Matt Martorello, and Defendants here, claimed was "owned" and "operated" by the LVD, but that was in fact controlled, directed, operated, funded, and grown by Matt Martorello and Defendants. Under Matt Martorello's and the Officer Defendants' direction, and with the Investor Defendants' knowing support, the lending operation

8

received over $30 million in usurious interest and principal payments from the proposed class during the relevant period, all of which moved through the Martorello Shell Defendants to conceal the true, non-tribal nature of the lending enterprise. (ECF No. 27.)

### C. The Court Issued Judgment Against Matt Martorello in the Related *Williams* Litigation.

On April 21, 2023, Plaintiffs in the related *Williams* litigation moved for partial summary judgment against Matt Martorello on their § 1962(d) RICO conspiracy claim (Count Three); certain elements of their § 1962(c) claim (Count Two); and Martorello's defenses that tribal law governed the disputed loan agreements and the LVD's tribal sovereign immunity shielded the loans from state usury regulation—the same defenses raised by Defendants here. (No. 3:17-cv-461, ECF No. 1165.) On June 16, 2023, the Court granted Plaintiffs' motion. (ECF No. 1328.) Following this Order, Matt Martorello, through several filings, agreed that no disputes of fact remained on Plaintiffs' § 1962(d) or § 1962(c) claims. (ECF Nos. 1345, 1359.) The Court thus granted summary judgment for Plaintiffs on both RICO claims. (ECF Nos. 1350, 1373.) The parties then stipulated to damages of $43,401,817.47 on the RICO claims and to dismissal of the remaining state law claims. (ECF Nos. 1387, 1389.) On September 22, 2023, the Court entered judgment against Matt Martorello on the RICO claims in the amount of $43,401,817.47, plus interest. (ECF Nos. 1406-1407.)

### D. Matt Martorello Moved Assets Overseas, Including During the Pendency of this Litigation.

Matt Martorello's and Defendants' use of legal gymnastics to avoid liability did not begin or end with his usurious lending enterprise. As explained more fully in Plaintiffs' Statement of Position Regarding How Money from the Alleged Scheme Flowed Through Each of Martorello's Companies (ECF No. 494), Matt Martorello has moved funds to at least two overseas trusts,

9

including Defendant Bluetech Trust, to shield those assets from U.S. jurisdictions, including this Court. These overseas assets, however, remain under Matt Martorello's, and through him as trustee, Bluetech Trust's, control and, if repatriated, will satisfy both the judgment in *Williams* and any eventual judgment in this case. With no evidence that Defendants—and more specifically, Bluetech Trust—can otherwise satisfy any judgment, Plaintiffs seek the Court's intervention to require repatriation of Bluetech Trust's overseas assets.

### 1. *The Bluetech Irrevocable Trust*

The Bluetech Irrevocable Trust was established by the creation of the "Trust Agreement of the M. Martorello Irrevocable Trust" dated November 1, 2010. (ECF No. 494-21 at 017541.) On June 10, 2011, Matt Martorello changed the name of his trust from the "The M. Martorello Irrevocable Trust" to the "Bluetech Irrevocable Trust." (ECF No. 494-22 at 013306.)

#### i. *Discretionary Beneficiaries*

Under the Trust Agreement, no one has the right to receive funds from the trust. Instead, the Trust has "Discretionary Beneficiaries." *See, e.g.*, (ECF No. 494-21 at 017541 (defining the term).) The Trustee has the power, but not any obligation, to provide any of the trust assets to any of the Discretionary Beneficiaries. (*Id*. at 017546.) Instead, "[u]pon the death of the Settlor, the Trustees shall distribute the Trust Fund to the estate of the deceased Settlor or to any living trust designated by the Settlor to receive the residue of the Settlor's estate." (*Id.* at 017569.)

The Bluetech Trust originally identified the Discretionary Beneficiaries as: (1) Justin Martorello (Martorello's brother); (2) Alexis M. Morris (Martorello's sister); and (3) Linda A. Clark (Martorello's mother). (*Id*. at 017567.) After Matt Martorello married his wife, she became the beneficiary on January 7, 2013. (ECF No. 494-24 at 013224 (Deed of Exclusion and Addition of Beneficiaries removing Justin Martorello, Alexis Morris, and Linda Clark; and adding Rebecca

Le Ann Martorello as the discretionary beneficiary). ███████████████████

███████████████████████████ (ECF No. 494-23 at 29462.)

    *ii.*  *The Trustee of the Bluetech Trust*

  The Trust Agreement appoints Guardian Trust Corporation as the original trustee. (ECF No. 494-21 at 017567.) Guardian Trust Corporation either changed its name or began using the name "Asiatrust Limited" as of May 2011. (ECF No. 494-27 at 086814 (identifying the original trustee as "Asiatrust Limited"); *see also id*. (using the seal of Guardian Trust Corporation, but the signature of "ATP Directors Limited).) After the Court denied Bluetech Trust's motions to dismiss in this case, Matt Martorello was appointed as trustee and has now attempted to dissolve the trust. (ECF No. 616.)

    *iii.*  *Matt Martorello's Control of the Trust Throughout the Case*

  Although Bluetech Trust purports to give the trustee exclusive discretion to distribute funds to the beneficiaries, Matt Martorello retains ultimate control over the trustee and any distributions, because Martorello has the power appoint and remove any trustees. (ECF No. 494-21 at 017555 (detailing the power of appointment and removal of the trustees and establishing that "the persons specified in the Fifth Schedule hereto" may "appoint one or more other persons or corporations"); *id*. at 017568 (establishing the "persons empowered to appoint successor Trustees of the M. Martorello Irrevocable Trust are: 1. Matthew Martorello[.]").)

████████████████████████████████████████████████████████

██████████████████████████████ The Trust also sends Martorello the yearly invoices for payment of expenses associated with the Trust. (*See, e.g.*, ECF No. 494-25 at 19354 (invoice for Asiaciti Trust dated December 10, 2016, addressed to "Matthew B. Martorello"); ECF No. 494-26 at 19348 (email from Asiaciti Trust to Martorello regarding annual renewal fees for the trust

11

for 2015, as well as an invoice for $5,350.00 addressed to Martorello for expenses of the trust).). As of the date of supposed termination, moreover, Matt Martorello was named trustee of the Bluetech Trust.

Under these circumstances, courts have repeatedly found that similarly situated individuals retained de facto control over the trust in question. *In re Lawrence*, 279 F.3d 1294, 1299 (11th Cir. 2002) (affirming the district court's ruling that "The import of these clauses and provisions, when read together, is that the appellant, as settlor and prospective beneficiary, retained de facto control over the Trust through his ability to appoint Trustees who could in their absolute discretion reinstate the appellant as a beneficiary and assign the entire proceeds to him."); *F.T.C. v. Affordable Media*, 179 F.3d 1228, 1242 (9th Cir. 1999) ("The Andersons' trust gives them affirmative powers to appoint new trustees and makes the anti-duress provisions subject to the protectors' powers, therefore, they can force the foreign trustee to repatriate the trust assets to the United States."); *S.E.C. v. Bilzerian*, 112 F. Supp. 2d 12, 25 (D.D.C. 2000) (explaining that the defendant "was a settlor of the Family Trust. The law of the Cook Islands allows a settlor to retain the power to change the trustee and the trust protector. Thus, even if [the defendant's] claim that he is no longer a beneficiary or trustee of the Trust is true, the trust instrument may provide him with the power to reinstate himself as trustee and beneficiary at any time he chooses.").

      *iv.*  *Transfer of Trust Assets in the Event of "Duress"*

The terms of the Bluetech Trust divest the trustee of the trust property—subject to written consent of the protector (Matt Martorello)—upon an "event of duress." (ECF No. 494-21 at 017559 ("Notwithstanding any other provision contain in this Deed and subject to the approval of the Trustees and the written consent of the Protector[,] any Trustee hereof shall cease to be a Trustee upon the happening of an Event of Duress… and upon ceasing to be a Trustee pursuant to

12

this clause such Trustee shall be divested of title to the property of this Trust . . . .").) Among other things, the Trust defines an event of duress as "any order, decree, or judgment of any court or tribunal in any part of the world which in the opinion of the Protector will or may directly or indirectly… in any way control, restrict, or prevent the free disposal by a Trustee of any monies, investments, or properties[.]" (*Id*. at 017543.)

During settlement negotiations, it was revealed that Matt Martorello has declared an event of duress under the Trust and transferred almost all the assets— ▬▬▬▬▬▬▬▬▬▬ ▬▬▬▬▬▬—to another trust named Capstone Irrevocable Trust, which is a trust formed under the laws of Nevis. This only underscores the need for an order requiring repatriation of the assets held overseas, as Matt Martorello, as trustee, will undoubtedly continue to move his assets to an endless list of trusts and accounts without repatriation.

> **2.   Funds from the Illegal Lending Enterprise Flowed to the Bluetech Irrevocable Trust.**

Funds from the Red Rock and Big Picture lending enterprises, for which Matt Martorello has now been found liable under RICO, flowed to the Bluetech Trust through its wholly owned subsidiary, Breakwater Holdings, LLC (now allegedly operating as BWH Texas, LLC), a limited liability company formed under the laws of the Cook Islands. (ECF No. 494-5 at 29453.)

Under Breakwater Holdings' Operating Agreement, it must be operated by a "Single Manager." (ECF No. 494-5 at 24937.) Under a section entitled "Manager's Operational Authority," the Operating Agreement provides that the manager has "sole authority to manage the Company and is authorised to make any contracts, enter into any transactions, and make and obtain any commitments on behalf of the Company to conduct or further the Company's business." (*Id*.)

When it was formed on November 1, 2010, Breakwater's original manager was "ATP Directors Limited," an affiliate of Asiatrust Limited (the trustee of the Bluetech Trust). (*Id*.) Then

13

Asiatrust Limited was removed as the manager and replaced by MBM Services—one of the companies owned and controlled by Matt Martorello. (ECF No. 494-28 at 25471.) On February 9, 2015, MBM Services was removed as the manager and replaced by Liont, LLC—another company owned and controlled by Matt Martorello. (*Id.* at 25471 ("The Member intends to remove MBM as Manager and replace it with Liont, LLC[.]").)

Liont and Breakwater Holdings formally entered into a Management Services Agreement on or around January 1, 2018. (ECF No. 494-29 at 019466.) Under this agreement, the services provided by Liont include but are not limited to: "enter, dispose and make all decisions regarding [Breakwater Holdings'] investment activities and/or opportunities; serve as liaison to [Breakwater Holdings'] members and/or trustees; accounting and reporting matters; tax returns preparations; and assisting with cash management related to tasks." *Id*. at 019470.

In an email from 2018, Matt Martorello explained the relationship between Bluetech, Breakwater, and Liont, stating:

> So [Breakwater Holdings] is owned by the Trust, but Liont is the Manager of [Breakwater Holdings] (per the Operating Agreement, or resolution amending). I am owner and President of Liont. The Trustee has authority over signing for the trust, but a resolution (or direct signature from trustee) is not required for this transaction per the Operating Agreement. It would be unusual (and time consuming) for the Trustee to execute this in the name of [Breakwater Holdings.] So Liont is the signing party here, and me on its behalf.

(ECF No. 494-30 at 32475.)[4]

In total, although Bluetech Trust and Breakwater have refused to participate in discovery (and have now allegedly terminated and gone bankrupt to avoid further litigation), ▮▮▮▮

---

[4] Even if the profits from the lending operation were not directed to the Bluetech Trust, the assets of the Trust would still be recoverable to satisfy the judgment. However, the fact that the Trust holds nearly all the illegal profits from the lending operation only underscores why repatriation is needed to redress Plaintiffs' and the Class's injuries.

███████████████████████████████████████

███████████████████████████. (ECF No. 494-23 at 29462.) Plaintiffs believe that Matt Martorello has transferred these assets to another trust, Capstone Trust, or possibly others.

## II. LEGAL STANDARD

The use of so-called "asset protection" trusts by defendants to frustrate the execution of U.S. judgments is not a novel concept. *See FTC v. Affordable Media*, 179 F.3d 1228, 1239-40 (9th Cir. 1999). Under these schemes, a U.S.-based defendant creates overseas trusts that ostensibly are beyond the defendant's "control" but that nonetheless remain at the defendant's disposal and for the defendant's benefit. *See id.* As this Court has already observed, "[a]sset protection [through use of these trusts] is, however, nothing more than a euphemism for evasion." *Galloway*, 2023 WL 5229231, at *11. Accordingly, "courts throughout the nation have rejected these attempts to impede their jurisdiction and to avoid compliance with their orders." *Id.*

Most notably, in *Affordable Media*, the Ninth Circuit affirmed a finding of contempt against defendants who refused to repatriate sufficient assets from overseas trusts (which, as here, were in the Cook Islands) to pay a judgment obtained by the FTC. 179 F.3d at 1239-40. The Ninth Circuit rejected the defendants' argument that compliance with the order to repatriate was impossible based on the structure of the trusts, reasoning that any supposed impossibility was "the intended result of [the defendants'] own conduct" and could not excuse the failure to repatriate. *Id.* Since *Affordable Media*, federal courts have ordered owners of overseas trusts to repatriate the assets in those trusts under threat of contempt. *See, e.g.*, *Travelers Cas. & Sur. Co. v. Dunmore*, No. 2:07-cv-02493, 2017 WL 6343914, at *2 (E.D. Cal. Dec. 11, 2017) (ordering repatriation of millions of dollars held in overseas accounts); *United States v. Grant*, No. 00-cv-08986, 2005 WL 2671479 (S.D. Fla. Sept. 2, 2005) (recommending order requiring appointment of U.S.-based

trustee and repatriation of assets held in overseas trusts), *report and recommendation adopted*, 2005 WL 3747779 (S.D. Fla. Dec. 22, 2005). Courts have authority to order repatriation even before a judgment is entered. *See Affordable Media*, 179 F.2d at 1239-40. Should a defendant fail to comply with a repatriation order, the court may also hold the defendant in contempt until compliance is achieved. *See id.*

## III. ARGUMENT

### A. The Court May Order Repatriation Under Applicable Law.

As private individuals, there are no federal laws governing the collection of any judgment obtained by Plaintiffs. Instead, the Court applies the law of the state where it is located—Virginia—to determine whether it may order repatriation. *See Dunmore*, 2017 WL 6343914, at *2 (relying on California law to determine repatriation, as no federal law applied).

To that end, Virginia law provides that a writ of fieri facias (judgment lien) shall issue against a judgment debtor's assets upon request of the judgment creditor. Va. Code Ann. § 8.01-466. The lien may be levied "on the current money and bank notes, as on the goods and chattels, of the judgment debtor, except such as are exempt from levy under Title 34." Va. Code Ann. § 8.01-478. The only property exempted from levy by Title 34 is: (1) the debtor's principal residence not exceeding $25,000 in value; (2) up to $5,000 in money and debts due to the debtor; and (3) up to $500 in additional money or debts due to the debtor for each dependent of the debtor. Va. Code Ann. § 34-4.[5]

Moreover, if discovery reveals "any money, bank notes, securities, evidences of debt, or

---

[5] The Code of Virginia also provides for other exemptions not applicable here, including additional exemptions for veterans (§ 34-4.1); exemptions for a certain amount of money per week for each dependent child of the debtor (§ 34-4.2); and exemptions for certain personal items such as wedding rings and pets (§ 34-26).

16

other personal estate, tangible or intangible," under the debtor's control or possession outside of the Commonwealth, Virginia law allows a court to order the debtor to deliver such assets in satisfaction of the judgment. Va. Code Ann. § 8.01-507; *see Amin v. Adams*, No. 0282-94-2, 1995 WL 293043, at *1 (Va. Ct. App. May 16, 1995) (holding that § 8.01-507 empowered circuit court to order the defendant "to deliver his property, including stock certificates, to the court"). And in the case of multiple defendants, Plaintiffs may collect on a joint judgment against any single defendant, including Bluetech Trust. Va. Code Ann. §§ 8.01-443, 8.01-469. Bluetech Trust's assets may thus be levied to execute both the *Williams* judgment, as it is against Matt Martorello as trustee and owner of the Trust, and any judgment in this case against the Trust specifically.

Moreover, although the Bluetech Trust now claims it was terminated, Virginia law allows the Court to nonetheless bind the Trust through its trustee (Matt Martorello). *See* Va. Code Ann. § 64.2-713(2)(b)(3) (providing that "orders binding a trustee bind beneficiaries of the trust . . . in proceedings involving creditors or other third parties"). Virginia law also permits courts to reverse a trustee's decision to terminate a trust for abuse of discretion, or when the trustee acted dishonestly or in bad faith, which is evident here and would surely be confirmed by an evidentiary hearing. *See Hoffman v. First Virginia Bank*, 263 S.E.2d 402, 408 (Va. 1980) (holding that when a trust's language gives the trustee discretion in a decision, the trustee may nonetheless be liable if it "acted dishonestly or in bad faith, or abused the discretion vested in it"); Restatement (3d) of Trusts § 87 (providing that courts may review discretionary decisions of a trustee, such as decisions to terminate a trust, for "abuse of discretion")

As in *Dunmore*, therefore, under the applicable state law, the Court may order Bluetech Trust to repatriate the assets held in the Trust, including those assets that, through its trustee Matt Martorello, have now been moved to other trusts or accounts. *See* 2017 WL 6343914, at *2.

Nothing more is required to order repatriation. *See id.* Accordingly, with no evidence that the assets in the Trust are exempt from execution of the judgment, Plaintiffs respectfully request that the Court order Bluetech Trust, through its trustee Matt Martorello, to repatriate to the United States the assets held in the Trust, including any assets now moved to other trusts.

> **B. An Evidentiary Hearing is Necessary to Confirm the Extent and Location of Martorello's Assets.**

Even from the limited information disclosed to Plaintiffs to date, it is apparent that Matt Martorello, through the Bluetech Trust, has gone to great lengths to move the profits gained from the unlawful lending scheme beyond the authority of this Court. Much remains unknown, however, as neither Bluetech Trust nor Breakwater Holdings has disclosed the full extent of the payments made to the Bluetech Trust, or whether the assets of the Trust have since moved to other accounts (including through activation of the "duress" provision in the Trust Agreement). Indeed, although Bluetech Trust now claims it has been terminated (ECF No. 616), it failed to appear at its scheduled Rule 30(b)(6) deposition on October 11, 2023, and it has provided zero evidence of this supposed termination.

Accordingly, to avoid further delays and dilatory tactics, and to ensure that they may timely recover on the judgment, Plaintiffs respectfully request that the Court order Bluetech Trust, through its trustee Matt Martorello, to appear for an evidentiary hearing, at which Mr. Martorello will testify under oath regarding the nature, extent, and location of the assets held in the Bluetech Trust and the alleged termination of the Trust. An evidentiary hearing is appropriate in circumstances such as this when the extent and location of a defendant's assets remains unknown. *See, e.g.*, *Painters Distr. Council 58 401(k) Tr. Fund v. Quality Assured Indus. Coatings, LLC*, No. 3:17-cv-1394, 2021 WL 4170022, at *5 n.6 (S.D. Ill. Sept. 8, 2021) (holding evidentiary hearing on alleged transfers made by the defendant to evade payment of a judgment); *Pronman v.*

*Styles*, No. 12-cv-80674, 2016 WL 1156770, at *3 (S.D. Fla. Mar. 10, 2016) ("The Court has scheduled an evidentiary hearing . . . where counsel for Judgment Creditor will be able to ask Judgment Debtors questions regarding relevant issues relating to Judgment Debtors' assets."); *Duttle v. Bandler & Kass*, No. 82-cv-5084, 1992 WL 162636, at *1 (S.D.N.Y. June 23, 1992) (holding evidentiary hearing to determine control of assets subject to RICO judgment). An evidentiary hearing will also allow the Court and the parties to avoid further rounds of objections and motions related to discovery into Bluetech Trust's assets and alleged termination.

## IV.   CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court grant their Motion to Repatriate Foreign Assets and for an Evidentiary Hearing.

Respectfully submitted,

**LULA WILLIAMS, et al.,**

By: *Kristi C. Kelly*
    Leonard A. Bennett, VSB #37523
    Craig C. Marchiando, VSB #89736
    **CONSUMER LITIGATION ASSOCIATES, P.C.**
    763 J. Clyde Morris Boulevard, Suite 1-A
    Newport News, Virginia 23601
    Telephone: (757) 930-3660
    Facsimile: (757) 930-3662
    Email: lenbennett@clalegal.com
    Email: craig@clalegal.com

    Kristi Cahoon Kelly (VSB #72791)
    Andrew Joseph Guzzo (VSB #82170)
    Casey S. Nash (VSB #84261)
    KELLY GUZZO, PLC
    3925 Chain Bridge Road, Suite 202
    Fairfax, VA  22030
    Telephone : (703) 424-7570
    Facsimile : (703) 591-0167
    E-mail:  kkelly@kellyguzzo.com
    E-mail:  aguzzo@kellyguzzo.com
    E-mail:  casey@kellyguzzo.com

    *Counsel for Plaintiffs*