**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

| | |
|---|---|
| RENEE GALLOWAY, *et al.*, *on behalf of themselves and all individuals similarly situated*, | Case No. 3:19-cv-00314-REP |
| Plaintiffs, | |
| v. | **REDACTED VERSION** |
| JUSTIN MARTORELLO., *et al.*, | |
| Defendants. | |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION
FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT**

Plaintiffs, by and through counsel, submit this Memorandum in Support of their Motion for Preliminary Approval of Class Settlement.

## INTRODUCTION

Over the past seven years, this Court has presided over a series of related cases against Matthew Martorello, his family members, and companies. *See also Williams v. Big Picture Loans, LLC*, Case No. 3:17-cv-461 (E.D. Va.); *Galloway v. Big Picture Loans, LLC*, Case No. 4:18-cv-406 (E.D. Va.). These cases have resulted in extensive—even perhaps unprecedented—litigation related to online short-term loans that carry triple-digit interest rates. Collectively, these three cases have generated almost **3,000** docket entries, including more than two dozen opinions issued by this Court on a variety of different issues. In addition to the litigation before this Court, the proposed settlement also resolves the extensive litigation that has been ongoing in the United States District Court for the District of Massachusetts, the United States District Court for the District of Oregon, and the United States Bankruptcy Court for the Northern District of Texas. *Duggan v. Martorello*, 596 F. Supp. 3d 158, 165 (D. Mass. 2022); *Smith v. Martorello*, No. 3:18-

CV-1651-AC, 2021 WL 981491, at *1 (D. Or. Mar. 16, 2021); *In Re: Eventide Credit Acquisitions, LLC*, Case No. 23-90007-mxm11 (N.D. Tex. Bankr.).

In December 2020, this Court approved a related settlement with the tribal entity, Big Picture Loans, LLC, as well as some of its other business partners. As a result of that settlement, the prior class members received: (1) a substantial reduction in the amounts owed on their loans; and (2) $8.7 million dollars in cash. *See Galloway v. Williams*, No. 3:19-CV-470, 2020 WL 7482191, at *1 (E.D. Va. Dec. 18, 2020) (granting final approval of the class settlement) (hereafter "*Galloway III*"). Since that time, Plaintiffs and their counsel have continued to press litigation against Mr. Martorello, his company, and family members, who were not parties to the prior settlement. As a result of this effort, Plaintiffs have now obtained a second settlement, which is 7.5 times the size of the prior settlement fund.[1] If approved by the Court, this settlement will result in the creation of a settlement fund in the amount of $65,000,000.00.

The proposed settlement is the second largest ever obtained against a participant in the tribal lending industry. And it surpasses the cash funds of multiple other settlements—in cases filed after this case—approved by this Court in other tribal lending cases. *See, e.g., Gibbs v. TCV, V, LLP*, No. 3:19-cv-00789, Dkt. 95 (E.D. Va. Mar. 29, 2021) (granting final approval of a class settlement resulting in the creation of a settlement fund in the amount of $50,050,000.00 by *three* separate contributors); *Gibbs v. Plain Green, LLC*, No. 3:17-cv-495, Dkt. 141 (E.D. Va. Dec. 13, 2019) (granting final approval of a class settlement resulting in the creation of a settlement fund in the amount of $53 million by *seven* separate contributors); *Gibbs v. Stinson*, Case No. 3:18-cv-676 (E.D. Va. Aug. 16, 2022) (approving settlement with cash fund of $44.5 million by multiple

---

[1] Neither Mr. Martorello, nor his entities have the authority to cancel loans originated by Big Picture Loans, LLC. Thus, debt cancellation is not a component of this settlement.

defendants); *Turner v. Zest Finance, Inc.*, Case No. 3:19-cv-00293 (E.D. Va.), Dkt. 114 (approving settlement with cash fund of $18.5 million by a single company); *Hengle v. Asner*, No. 3:19-cv-250-DJN (E.D. Va.), Dkt. 230 (approving settlement with cash fund of $39 million by multiple defendants); *Blackburn v. A.C. Israel Enterprises*, Case No. 3:22-cv-146 (E.D. Va. Mar. 2, 2024), Dkt. 228 (approving settlement with cash fund of $39 million by multiple defendants).

After years of litigation and unsuccessful mediation efforts, Plaintiffs, Matt Martorello, Rebecca Martorello, Bluetech Irrevocable Trust, and BWH Texas, LLC, entered into a Stipulation and Agreement of Settlement ("Settlement Agreement"), which the parties have attached to this Motion for Preliminary Approval.[2] The proposed settlement affords significant relief, namely: (1) the creation of a $65,000,000.00 million common fund to be distributed to consumers who repaid unlawful amounts; and (2) Defendants' agreement "not to provide any services to Big Picture or its successors-in-interest in any form," including the collection of any loans. *See* Ex. 1 at §§ 3.4, 3.15. This relief builds on the significant relief already approved by this Court, and it mirrors similar relief approved by this Court in other tribal lending cases.

Under Federal Rule of Civil Procedure 23, Plaintiffs and Defendants now seek preliminary approval of the proposed class action settlement.  The parties request that the Court preliminarily certify the proposed class and approve the proposed class settlement by entering the proposed Order of Preliminary Approval of Class Action Settlement.  A final motion supporting the fairness of the proposed class action settlement will be submitted: (1) after Settlement Class Members have received notice providing them an opportunity to object or opt-out; and (2) before the Court's Final

---

[2] The attached settlement agreement is a redacted version of the agreement. As will be explained in a Motion to Seal, Plaintiffs have redacted certain portions of the settlement agreement regarding the source of the funding of the settlement to protect a "source[] of business information that might harm" competitive standing. *Woven Elecs. Corp. v. Advance Grp., Inc.*, 930 F.2d 913 (4th Cir. 1991) (citation omitted).

Fairness Hearing.  For the reasons explained below, the proposed class action settlement is reasonable, fair, and adequate, and the Court should preliminarily approve it.

## KEY SETTLEMENT TERMS

### A.    Class Definition

Under the Settlement Agreement, the parties agreed to resolve the claims of a nationwide class ("Settlement Class") defined as:

> All persons within the United States who executed loan agreements with Red Rock or Big Picture from June 22, 2013, through May 1, 2024.

Ex. 1 at § 2.23.  This is similar to the settlement class approved by the Court in the prior settlement except this definition accounts for consumers who took out loans after the approval of the last settlement. *Compare* Ex. 1 at § 2.23; *with Galloway III*, 2020 WL 7482191 at *2. Based on the data provided by Big Picture's vendor, Plaintiffs estimate that the Settlement Class comprises approximately 823,394 Settlement Class Members.[3]

### B.    Settlement Consideration

The proposed class settlement provides significant cash payments to consumers who repaid more than the principal balance of their loans. Specifically, the Settlement Agreement creates a Settlement Fund of sixty-five million dollars ($65,000,000.00). Ex. 1 at § 2.25. As outlined in the Settlement Agreement, payments from the Fund will be allocated using a tiered formula after payment of service awards to Plaintiffs,[4] attorneys' fees, and costs, as approved by this Court:

---

[3] Plaintiffs are still waiting on the final set of loan-level data for the class. Pursuant to the prior settlement with Big Picture Loans, it has until June 10, 2024, to provide the remaining data.

[4] On six occasions, this Court has approved the use of this tiered formula. *Gibbs v. TCV, V, LLP*, No. 3:19-cv-00789, Dkt. 95 (E.D. Va. Mar. 29, 2021); *Gibbs v. Plain Green, LLC*, No. 3:17-cv-495, Dkt. 141; *Gibbs v. Stinson*, Case No. 3:18-cv-676 (E.D. Va. Aug. 16, 2022); *Turner v. Zest Finance, Inc.*, Case No. 3:19-cv-00293 (E.D. Va.), Dkt. 114; *Hengle v. Asner*, No. 3:19-cv-250-DJN (E.D. Va.), Dkt. 230; *Blackburn v. A.C. Israel Enterprises*, Case No. 3:22-cv-146 (E.D. Va. Mar. 2, 2024), Dkt. 228.

Tier 1:  The dollar amount of all payments made by each Settlement Class Member in Arizona, Arkansas, Colorado, Connecticut, Idaho, Illinois, Indiana, Kansas, Kentucky, Massachusetts, Minnesota, Montana, New Hampshire, New Jersey, New Mexico, New York, North Carolina, Ohio, South Dakota, Vermont, Virginia, and Wisconsin so long as the Settlement Class Member paid the principal amount of his or her loan.

Tier 2:  The dollar amount of payments made above the legal interest limits if the original principal amount was repaid and if the Settlement Class Member resided in Alabama, Alaska, California, Delaware, Florida, Georgia, Hawaii, Iowa, Louisiana, Maine, Maryland, Michigan, Mississippi, Missouri, Nebraska, North Dakota, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, Tennessee, Texas, Washington, Washington D.C., West Virginia, or Wyoming at the time the Settlement Class Member took out the loan; and

Tier 3:  Settlement Class Members in Nevada and Utah will not receive cash payments.

*Id*. at § 3.12(a). Settlement Class Members in Tier 1 or Tier 2 who repaid the principal amount borrowed will receive a cash award based on a *pro rata* calculation rounded down to the nearest cent. *Id*. at § 3.12(b)(1). In the event any Settlement Class Member took out more than one loan during the class period, his or her claim amount will be calculated by determining the claim amount for each loan and adding them together.  *Id*. at § 3.12(b)(1).

The relief provided by the proposed class action settlement is significant.  Most consumers will receive a cash payment (in addition to the cash payments made pursuant to the *Galloway III* settlement), and those with outstanding loan balances with benefit from Defendants' agreement "not to provide any services to Big Picture or its successors-in-interest in any form," including the collection of any loans. *Id*. at 3.15. Importantly, Class Members will receive payments without needing to submit a claim form, prove any harm, or take any affirmative action.

**C.    Class Action Fairness Notice**

At their own expense, Defendants Matt and Rebecca Martorello will provide notice of the proposed settlement under the Class Action Fairness Act of 2005, 28 U.S.C. § 1715 ("CAFA").

*Id.* at 3.18. To account for the deadlines under governing law, the parties request that the Court schedule the Final Approval Hearing at least 90 days after the CAFA Notice is mailed.

**D.      Attorneys' Fees, Costs, and Service Awards**

Class Counsel intends to apply for attorneys' fees and costs in an amount approved by the Court, but not to exceed $21,666,666.66, *i.e.*, one-third of the monetary consideration paid by Defendants. *Id.* at § 3.14.  Plaintiffs also will apply for a service awards no later than thirty (30) days before the Final Fairness Hearing. *Id.* at § 3.13.  This request will seek awards for Named Plaintiffs' service awards to each of the Class Representatives in *Williams*; to each of the Class Representatives in the *Galloway* matters; and to each of the Class Representatives in the *Smith* and *Duggan* matters. *Id.* The requested service awards shall not exceed $20,000 per Class Representative and any applications for service awards shall take into account the Class Representative's contribution to the litigation including but not limited to whether the Class Representative has responded to discovery, been deposed, committed to testifying at trial, served on the creditor's committee, or was offered and declined an amount to settle any of these matters on an individual basis. *Id.* The Settlement is not conditioned upon the Court's approval of the attorneys' fees or service awards. *Id.*

**E.      Release of Claims**

In return for this consideration, Settlement Class Members will provide a release the "Released Parties," which the Settlement Agreement defines as Matt Martorello, Rebecca Martorello, Justin Martorello, Eventide, BWH Texas, Liont, LLC, Gallant Capital, LLC, the RLM 2018 Family Trust, the Martorello 2018 Children's Trust, Martorello Investments, LP, the RLM Management Trust, the Capstone Irrevocable Trust, the Bluetech Irrevocable Trust, Martorello 2023 Children's Trust, BVNT Children's Trust 1, BVNT Children's Trust 2, BVNT Children's, LLC, Vroom Trust, Obsidian LLC, Capstone Holdings, LLC, Capstone Opportunities, LLC, GFLP

Entity 1, LP, GFGP Entity 1, LP, Kairos Holdings, LLC, Promovere Inc., Braviant, LLC ("Braviant"), Woodside Special Opportunity PE Fund, LP, Promus Ventures II, LP, GreenKey Technologies, LLC, PV Rocket Labs I, LLC, Promus III, LP, PV Expansion Fund I, Dorado Analytics, LLC, and Lonnie Jeremy Davis, and any and all other persons, entities or trusts whether presently or previously in existence, that are directly or indirectly in any way now or heretofore owned by, controlled by, related to, or associated with the foregoing, together with any of their respective current, former or successor: parent companies, holding companies, subsidiaries, trusts, sub-trusts, trustees, beneficiaries, parents, guardians, children, estates, principals, protectors, grantors, settlors, officers, directors, agents, employees, attorneys, successors, affiliates, heirs, assignees, general partners, limited partners, managers, members, vendors, consultants, transferees, investors, creditors, accountants, insurers, and shareholders. *Id.* at § 2.20.[5]

The "Released Claims" depends on whether a settlement class member receives a cash payment. *Id.* at § 2.18. For any "Settlement Class Member who is sent a payment from the Settlement Fund," they release "any and all claims, causes of action, suits, obligations, debts,

---

[5] All of the foregoing companies and trusts are affiliated with the Martorello's. Thus, other than the release for Lonnie Jeremy Davis (*i.e.*, a business partner who was previously a defendant), the release only applies to the Martorello's and their entities and trusts. And critically, the Settlement Agreement expressly defines "Non-Released Parties" as "Big Picture Loans, the Tribe, Tribal Economic Development, LLC, Tribal Acquisition Company, LLC, Duck Creek Tribal Financial, LLC, Ascension Technologies, LLC, Amlaur Resources, Columbia Pipe & Supply Co., Timothy Arenberg, Terrance Arenberg, and DTA Trinity Wealth Transfer Trust, and, to the extent that any such interpretation does not include any Released Parties, any and all other persons, entities, or trusts, whether presently or previously in existence, that are directly or indirectly in any way now or heretofore owned by, controlled by, related to, or associated with the foregoing, together with any of their respective current, former or successor: parent companies, holding companies, subsidiaries, trusts, sub-trusts, trustees, beneficiaries, parents, guardians, children, estates, principals, protectors, grantors, settlors, officers, directors, agents, employees, attorneys, successors, affiliates, heirs, assignees, general partners, limited partners, managers, members, vendors, consultants, transferees, investors, creditors, accountants, insurers, and shareholders." *Id.* at § 2.20. This means that Class Members retain their rights to challenge the legality of their loans with Big Picture or to seek damages from its non-tribal investor business partners.

demands, agreements, promises, liabilities, damages, losses, controversies, costs, expenses and attorneys' fees of any nature whatsoever, whether arising under federal law, state law, common law or equity, tribal law, foreign law, territorial law, contract, rule, regulation, any regulatory promulgation (including, but not limited to, any opinion or declaratory ruling), or any other law, including Unknown Claims, whether suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, liquidated or unliquidated, punitive or compensatory, as of the date of the Preliminary Approval Order, that relate to or arise out of loans made by and/or in the name of Red Rock or Big Picture from June 22, 2013 to May 1, 2024 (with the sole exception of claims to enforce the Settlement or the Judgment). For those who do not receive a payment, they release only their potential right "to bring a class action, collective action, or mass action against Released Parties based on any and all claims, causes of action, suits, obligations, debts, demands, agreements, promises, liabilities, damages, losses, controversies, costs, expenses, and attorneys' fees of any nature whatsoever, whether arising under federal law, state law, common law or equity, tribal law, foreign law, territorial law, contract, rule, regulation, any regulatory promulgation (including, without limitation, any opinion or declaratory ruling), or any other law, including Unknown Claims, whether suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, liquidated or unliquidated, punitive or compensatory, as of the date of the Preliminary Approval Order[.]" *Id.* at § 2.18.

**F.     Notice and Exclusions**

Class notice will be a combination of email notice to verified email addresses or U.S Mail to each Settlement Class Member. If approved by the Court, the Settlement Administrator,

American Legal Claims Services,[6] will first email direct notice to Settlement Class Members at the most recent email address shown in Big Picture's electronic records, as maintained in the ordinary course of business, for each loan at issue.  *Id.* at § 5.3(a).  If email notice results in a bounce-back email, direct notice will be mailed to Settlement Class Members via first class mail. *Id.* at § 5.3(b).  Prior to mailing, the Settlement Administrator will run mailing addresses once through the NCOA or any other postal address verification database that the Administrator deems proper.  *Id.*  Returned direct notices will be re-mailed if they are returned within twenty days of the postmark date and contain a forwarding address. *Id.* Additionally, the Settlement Administrator will maintain and update the previous website, www.bigpictureloansclassaction.com, on which pertinent information related to this settlement will be made available to Settlement Class Members, including the Class Action Complaint; the Settlement Agreement; any motions and memoranda seeking approval of the proposed class action settlement, approval of attorneys' fees and costs, or approval of service awards; and any orders of this Court relating to the proposed class action settlement. *Id.*

Any Settlement Class Member who wants to be excluded from the class must advise the Class Administrator in writing, and his or her opt-out request must be postmarked no later than the opt-out deadline.  *Id.* at § 7.3.  The Settlement Class Member's opt-out request must contain the Settlement Class Member's full name, address, and telephone number. *Id.*  Further, the Settlement Class Member must include a statement in the written request that he or she wishes to be excluded from the Settlement Agreement. *Id.* The request also must be signed by the Settlement Class

---

[6] American Legal Claims Services administered the class settlement in *Galloway III*. *See Galloway III*, 2020 WL 7482191 at *3.

Member. *Id.*  Requests for exclusion that do not comply with any of the foregoing requirements are invalid. *Id.*

F. *Williams* **Judgment.**

The settlement is conditioned upon vacatur of the *Williams* judgment, which is currently on appeal to the Fourth Circuit. *Id.* at § 11.1. As will be detailed in a Motion for Vacatur to be filed in the *Williams* action, if the settlement is approved, the Parties agree that exceptional circumstances exist justifying vacatur here because: (1) the settlement will permanently end years-long litigation in many cases in the Eastern District of Virginia, the U.S. Court of Appeals for the Fourth Circuit, and across the country; (2) the vacatur will impact no third parties; (3) all parties to the settlement desire vacatur because settlement would otherwise be impossible; and (4) this settlement serves the public interest by making available a significant amount of previously committed judicial resources to deal with other matters, advancing the efficiency of the federal courts. *See, e.g., Pitterman v. Gen. Motors LLC*, 2018 WL 6435902, at *3 (D. Conn. Dec. 7, 2018) (noting that the case had "been actively litigated for more than four years, and district courts in this Circuit have generally been more receptive to vacatur where, as here, 'vacatur would bring an end to the tortured history of a litigation, opening a door to settlement by relieving some party from having to fight an undesirable ruling on appeal.'") (quoting *Barry v. Atkinson*, 193 F.R.D. 197, 200 (S.D.N.Y. 2000)); *Davis v. Cnty. of Riverside*, 2022 WL 1787668, at *2 (C.D. Cal. Jan. 7, 2022) ("[T]he Court finds that the unique circumstances of this case, which has entailed years of difficult litigation, on balance, warrants granting the unopposed motion to vacate the judgment and attorney's fee order to facilitate the settlement."); *Bassett v. Credit Mgmt. Servs.*, Inc., 2019 WL 6767053, at *1 (D. Neb. July 29, 2019) ("For the purpose of facilitating the settlement reached in this lawsuit the partial summary judgment entered by this Court on June 28, 2018, in favor of the Plaintiffs (Filing No. 84) is vacated."). The parties intend to file the Motion to Vacate before the Final Approval Hearing.

**ARGUMENT**

**A.      Class Certification Standard**

Courts in the Fourth Circuit favor resolution of litigation before trial.  *See, e.g.*, *S.C. Nat'l Bank v. Stone*, 749 F. Supp. 1419, 1423 (D.S.C. 1990) ("The voluntary resolution of litigation through settlement is strongly favored by the courts.") (citing *Williams v. First Nat'l Bank*, 216 U.S. 582 (1910)).  Settlement spares the litigants the uncertainty, delay, and expense of a trial and appeals while reducing the burden on judicial resources.  As the court observed in *Stone*:

> In the class action context in particular, there is an overriding public interest in favor of settlement. Settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strains such litigation imposes upon already scarce judicial resources.

749 F. Supp. at 1423 (quoting *Armstrong v. Bd. of Sch. Dirs.*, 616 F.2d 305, 313 (7th Cir. 1980)).  Rule 23 permits courts to preliminarily certify a class to carry out a settlement of the case.  *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liability Litig.*, 55 F.3d 768, 793–94 (3d Cir. 1995) (collecting cases).  A court may grant preliminary approval of a class action where the proposed class satisfies the four prerequisites of Rule 23(a) (*i.e.*, numerosity, commonality, typicality, and adequacy of representation), as well as one of the three subsections of Rule 23(b).  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997).  If the Court determines that a settlement class should be certified, it then should follow a three-step process before granting final approval of a proposed settlement.  *Levell v. Monsanto Rsch. Corp.*, 191 F.R.D. 543 (S.D. Ohio 2000).

First, the Court should preliminarily approve the proposed settlement.  *Id.* at 547.  Second, class members must be given notice of the proposed settlement.  *Id.*  Third, a final fairness hearing must be held, after which the Court should decide whether the proposed settlement is fair, adequate, and reasonable to the class as a whole, and consistent with the public interest.  *Id.*  This

protects the class members' procedural due process rights and enables the Court to fulfill its role as the guardian of the class's interests.  *Id.*  Approval of a class action settlement is committed to the "sound discretion of the district courts to appraise the reasonableness of particular class-action settlements on a case-by-case basis, in light of the relevant circumstances."  *In re MicroStrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d 654, 663 (E.D. Va. 2001).  Additionally, "there is a strong initial presumption that the compromise is fair and reasonable." *Id.*

Rule 23 governs the certification of class actions.  In considering a settlement at the preliminary approval stage, the first question for the Court is whether a settlement class satisfies Rule 23's requirements, and thus may be conditionally certified for settlement purposes.  Under Rule 23(a), one or more members of a class may sue as representative parties on behalf of a class if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the class's interests.  Fed. R. Civ. P. 23(a).

Here, the parties have reached a proposed agreement on behalf of the Settlement Class, which they respectfully request be preliminarily certified.

**B.**    **The Settlement Class Meets the Certification Elements**

    *i.*    *The Settlement Class satisfies Rule 23(a)*

       1.    Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." There is no set minimum number of potential class members that fulfills the numerosity requirement.  *See Holsey v. Armour & Co.*, 743 F.2d 199, 217 (4th Cir. 1984).  But where the class numbers 25 or more, joinder is usually impracticable.  *See Cypress v. Newport*

*News Gen. & Nonsectarian Hosp. Ass'n*, 375 F.2d 648, 653 (4th Cir. 1967) (holding 18 class members sufficient).

The numerosity requirement is easily met here. As detailed above, it is estimated that there are at least 800,000 Settlement Class Members, including the named Plaintiffs. Joinder of this many individuals is neither possible nor practical, so the first prong of the certification test has been met. *See Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 425 (4th Cir. 2003). Indeed, this Court has already found joinder impracticable based on a similar, but smaller class in *Galloway III*. *See, e.g., Galloway III*, Dec. 20, 2019 Preliminary Approval Order, Dkt. 65 at pg. 4 (finding "the number of Settlement Class Members is so numerous that joinder is impracticable"). Similarly, this Court also found that numerosity was satisfied in the *Williams* matter, and that decision was affirmed by the Fourth Circuit. *Williams v. Big Picture Loans, LLC*, 339 F.R.D. 46, 52 (E.D. Va. 2021), *aff'd sub nom. Williams v. Martorello*, 59 F.4th 68 (4th Cir. 2023).

2. Commonality

Rule 23(a)(2) requires that the court find that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "Commonality is satisfied where there is one question of law or fact common to the class, and a class action will not be defeated solely because of some factual variances in individual grievances." *Jeffreys v. Commc'ns Workers of Am., AFL-CIO*, 212 F.R.D. 320, 322 (E.D. Va. 2003). And the common issue must be such that "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* The standard is a liberal one that cannot be defeated by the mere existence of some factual variances in individual grievances among class members. *Id.* at 322; *Mitchell-Tracey v. United Gen. Title Ins. Co.*, 237 F.R.D. 551, 557 (D. Md. 2006) (finding that factual differences among class members will not necessarily preclude certification "if the class members share the same legal theory").

Here, by definition, the Settlement Class Members share multiple questions of law and fact.  The Settlement Class Members are alleged to be the subject of a practice in which the lending enterprise, with allegations of Defendants' direct participation and support, charged usurious interest rates on consumer loans in violation of federal and state law. The practices at issue for this claim are identical across all class members.  The theories of liability as to the Settlement Class Members therefore arise from the same practices and present basic questions of law and fact common to all members of the Settlement Class.  *See* Fed. R. Civ. P. 23(a).  As with numerosity, moreover, this Court has also already found that there are common questions of law and fact based on the same class and nearly identical claims to those here. *Galloway III*, Dec. 20, 2019 Preliminary Approval Order, Dkt. 65 at pg. 4 (finding "there are questions of law and fact common to the Settlement Class Members"); *see also Williams*, 339 F.R.D. at 58 ("The proposed class members' claims are all based on the same tribal lending scheme, and in particular, on 'the same conduct, practice, and procedure on the part of Martorello.'") (citation omitted).[8]

### 3.  Typicality

In the typicality analysis, "[a] class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 146 (4th Cir. 2001).  "Nevertheless, the class representatives and the class members need not have identical factual and legal claims in all respects.  The proposed class satisfies the typicality requirement if the class representatives assert claims that fairly encompass those of the entire class, even if not identical." *Fisher v. Va. Elec. & Power Co.*, 217 F.R.D. 201, 212 (E.D. Va. 2003). "The typicality requirement mandates that Plaintiffs show (1) that their interests are squarely

---

[8] Other courts have found commonality existed in comparable cases. *See Inetianbor, et al. v. Cashcall, Inc., et al.*, 13-6066-CIV-COHN/SELTZER (S.D. Fla., Sept. 19, 2016), ECF No. 968-53; *MacDonald v. CashCall, Inc.*, 333 F.R.D. 331, 342-43 (D.N.J. 2019); *Brice v. Haynes Invs., LLC.*, 2021 WL 1916466, at *5 (N.D. Cal. Apr. 23, 2021).

aligned with the interests of the class members and (2) that their claims arise from the same events and are premised on the same legal theories as the claims of the class members." *Jeffreys*, 212 F.R.D. at 322.  Commonality and typicality tend to merge because both "serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 n.5 (2011).

Plaintiffs' claims arise from Defendants' practices for consumer loans.  As discussed in the previous section, these are the same claims advanced on behalf of the Settlement Class Members, and Plaintiffs are members of the Settlement Class.  Thus, in seeking to prove their claims, Plaintiffs will advance the claims of Settlement Class Members.  This is the hallmark of typicality. *See Deiter v. Microsoft Corp.*, 436 F.3d 461, 466 (4th Cir. 2001) (citing Fed. R. Civ. P. 23(a)(3)). And just as with the prior requirements, the Court has already found typicality among the same class based on the nearly identical claims raised in *Galloway III*. *Galloway III*, Dec. 20, 2019 Preliminary Approval Order, Dkt. 65 at pg. 4 (finding "the Named Plaintiffs' claims are typical of the claims of the Settlement Class Members"); *see also Williams*, 339 F.R.D. at 59 ("the proposed class representatives suffered the same injury and have the same basic legal claims as those of the proposed class members. The only difference across class members would be the actual damages they are asserting which will not preclude a finding of typicality.").

4.   Adequacy

"Finally, under Rule 23(a)(4), the class representatives must adequately represent the interests of the class members, and legal counsel must be competent to litigate for the interests of the class." *Jeffreys*, 212 F.R.D. at 323. "Basic due process requires that the named plaintiffs

possess undivided loyalties to absent class members." *Fisher*, 217 F.R.D. at 212 (citing *Broussard v. Meineke Disc. Muffler Shops*, 155 F.3d 331, 338 (4th Cir. 1998)).

The adequacy of representation requirement is met here. As for the class representatives, this Court has previously found that these very same individuals "have fairly and adequately represented the interests of the Settlement Class." *Galloway III*, Dec. 20, 2019 Preliminary Approval Order, Dkt. 65 at pg. 4; *see also Williams*, 339 F.R.D. at 59 ("As noted under the analysis of the commonality and typicality factors, Plaintiffs' interests are in line with those of the broader classes, and Plaintiffs were, in fact, already named as class representatives in a related case."). Since that time, the Plaintiffs have continued to vigorously litigate these cases for almost four more years, including continued discovery, trial preparation, a judgment against Mr. Martorello, and many of them were added to the bankruptcy case (where they were alleged to have violated the automatic stay for continuing to pursue their claims).

Plaintiffs' counsel is also the same team that was approved by this Court in *Galloway III* and *Williams. See, e.g., Williams*, 339 F.R.D. at 59 ("Proposed Class Counsel have extensive experience with class actions, consumer financial protection law, and tribal lending operations. . . . The Court has already found them competent in a related case, *Galloway III*, 2020 WL 7482191, at *8 (E.D. Va. Dec. 18, 2020), and the Court reaffirms that finding here."). In addition to these related matters, the Court has found Plaintiffs' counsel from Virginia, Kelly Guzzo, PLC, and Consumer Litigation Associates P.C., adequate in seven other tribal lending cases. *Gibbs v. TCV, V, LLP*, No. 3:19-cv-00789, Dkt. 95 (E.D. Va. Mar. 29, 2021); *Gibbs v. Plain Green, LLC*, No. 3:17-cv-495, Dkt. 141; *Gibbs v. Stinson*, Case No. 3:18-cv-676 (E.D. Va. Aug. 16, 2022); *Turner v. Zest Finance, Inc.*, Case No. 3:19-cv-00293 (E.D. Va.), Dkt. 114; *Hengle v. Asner*, No. 3:19-

cv-250-DJN (E.D. Va.), Dkt. 230; *Blackburn v. A.C. Israel Enterprises*, Case No. 3:22-cv-146 (E.D. Va. Mar. 2, 2024), Dkt. 228.[9]

Plaintiffs have no antagonistic or conflicting interests with the Settlement Class Members. Plaintiffs and the Settlement Class Members alike seek monetary relief for Defendants' allegedly unlawful actions and/or to prevent Defendants from collecting any outstanding balances on their loans. Plaintiffs are members of the Settlement Class. Considering the identity of claims, there is no potential for conflicting interests. Plaintiffs also have been very active here, including answering discovery, sitting for depositions, trial preparation, serving on the creditor's committee in the recent bankruptcy cases, and engaging in multiple rounds of settlement discussions. *See* Ex. 2, Kelly Decl. ¶ 17; Ex. 4, Caddell Decl. ¶ 40. As a result, the Settlement Class Members are adequately represented to meet Rule 23's requirements.

    ii.    *The Settlement Class satisfies Rule 23(b)(3)*

The proposed settlement contemplates permitting opt-outs under Rule 23(b)(3).  An action may be maintained as a class action if the four Rule 23(a) elements described above are satisfied, and in addition, "the Court finds that the questions of law or fact common to the members of the Class predominate over any questions affecting only individual members, and that a Class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). This Court has already found these requirements satisfied based on the

---

[9] The Court has approved counsel in other consumer-protection and complex class actions, typically as lead or co-lead counsel.  *See, e.g.*, *Clark v. Trans Union, LLC*, No. 3:15-cv-391, 2017 WL 814252, at *13 (E.D. Va. Mar. 1, 2017) ("This Court echoes the sentiments previously stated about Clark's counsel because they pertain here with equal vigor."); *Thomas v. FTS USA, LLC*, 312 F.R.D. 407, 420 (E.D. Va. 2016) ("[T]he Court finds that Thomas'[s] counsel is qualified, experienced, and able to conduct this litigation so as to fully and adequately represent both classes. Counsel is experienced in class action work, as well as consumer protection issues, and has been approved by this Court and others as class counsel in numerous cases around the country."); *Dreher v. Experian Info. Sols., Inc.*, No. 3:11-cv-624, 2014 WL 2800766, at *2 (E.D. Va. June 19, 2014) ("Dreher's counsel is well-experienced in the arena of FCRA class action litigation.");

same class and nearly identical claims in *Galloway III. Galloway III*, Dec. 20, 2019 Preliminary

Approval Order, Dkt. 65 at pg. 4 (finding "the questions of law and fact common to the Settlement

Class Members predominate over any questions affecting any individual Settlement Class

Member; and, [] a class action provides a fair and efficient method for settling the controversy

under the criteria set forth in Rule 23 and is superior to alternative means of resolving the claims

and disputes at issue in this Lawsuit."). So too here.

        1.     Predominance

If the Settlement Class is to be certified under Rule 23(b)(3), the common issues of law

and fact shared by the Settlement Class Members must "predominate" over individual issues.  Rule

23(b)(3)'s predominance inquiry focuses on whether the proposed class is "sufficiently cohesive

to warrant adjudication by representation."  *Gariety v. Grant Thornton, LLP*, 368 F.3d 356, 362

(4th Cir. 2004); *Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 142 (4th Cir. 2001).  This criterion is

normally satisfied when there is an essential, common factual link between all class members and

the defendants for which the law provides a remedy.  *Talbott*, 191 F.R.D. 99, 105 (W.D. Va. 2000)

(citing *Halverson v. Convenient FoodMart, Inc.*, 69 F.R.D. 331 (N.D. Ill. 1974)).  And

predominance exists where the resolution of class members' individual claims depends on

examining common conduct by a defendant.  *Jeffreys*, 212 F.R.D. at 323 (finding predominance

because class members' claims were based on same acts by defendant and the determinative

"question in each individual controversy" was common).

As many courts have found in similar cases, the predominance requirement is satisfied here

because the essential factual and legal issues for the Settlement Class Members' claims are

common and relate to alleged standardized usury violations. *See also Gibbs*, 2021 WL 4812451,

at *16-20 (finding, on contested motion, that common questions of law and fact predominated

under similar circumstances); *MacDonald*, 333 F.R.D. at 350 ("Plaintiffs can answer the question

of whether a loan agreement is usurious by using the common evidence of the agreements themselves, which will suffice to demonstrate their claims. Plaintiffs have shown that common questions predominate as to their usury cause of action."); *Upshaw*, 203 F.R.D. at 700–01 (finding predominance satisfied because "Defendants' conduct was substantially the same with respect to all members of the class," and "[t]his conduct gives rise to Plaintiffs' class-wide liability claims for violation of the Georgia usury laws and RICO"). *Talbott*, 191 F.R.D. at 105 ("Here, common questions predominate because of the standardized nature of [defendant's] conduct.").

In sum, "the majority of the liability questions with regard to Plaintiff's RICO claims do not require inquiry into any individual transactions or file and are identical regardless of which class member would be presenting his or her RICO claim." *Robinson v. Fountainhead Title Grp. Corp.*, 257 F.R.D. 92, 94 (D. Md. 2009). Because this case involves an "alleged scheme to defraud" that "if proven, operated in the same manner with regard to all customers," predominance is satisfied. *Id.*

### 2. Superiority

Finally, the Court should determine whether a class action is superior to other methods for the fair and efficient adjudication of this controversy under Rule 23(b)(3). The factors to be considered here in determining the superiority of the class mechanism are: (1) the interest in controlling individual prosecutions; (2) the existence of other related litigation; (3) the desirability of concentrating the litigation in one forum; and (4) manageability.[10] *Hewlett v. Premier Salons Int'l, Inc.*, 185 F.R.D. 211, 220 (D. Md. 1997); *accord Newsome v. Up To Date Laundry, Inc.*, 219 F.R.D. 356, 365 (D. Md. 2004).

---

[10] A trial court may disregard management issues in certifying a settlement class, but the proposed class must still satisfy the other requirements of Rule 23. *Amchem*, 521 U.S. at 620. Thus, this criterion is not material to the Court's analysis in this posture.

Efficiency is the primary focus in determining whether a class action is indeed the superior method of adjudicating the controversy. *Talbott*, 191 F.R.D. at 106. In examining these factors, it is proper for a court to consider the "inability of the poor or uninformed to enforce their rights, and the improbability that large numbers of class members would possess the initiative to litigate individually." *Haynes v. Logan Furniture Mart, Inc.*, 503 F.2d 1161, 1165 (7th Cir. 1974).

In *Jeffreys*, for instance, the court found that because "the facts and issues involved are identical for all class members, class members have little incentive and few resources to pursue litigation on their own, the class members are dispersed over several states, and there are few manageability concerns, the class action is the best method of resolving the matter." 212 F.R.D. at 323. The same is true here. Common issues predominate. And the Settlement Class Members' individual claims are small, thus providing little incentive for individual litigation. *See Amchem*, 521 U.S. at 617 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." (quoting *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997))).

A class action is superior to other available methods for the fair and efficient adjudication of the case because a class resolution of the issues described above outweighs the difficulties in management of separate, individual claims and allows access to the courts for those who might not gain such access standing alone, particularly given the small amount of the damage claims that would be available to individuals. Moreover, apart from the fact that the proposed class action settlement allows a recovery of actual damages, certification permits individual claimants to opt-out and pursue their own actions separately if they believe they can recover more in an individual suit. Thus, both predominance and superiority are satisfied. *See Gibbs*, 2021 WL 4812451, at *20

(Lauck, J.) (finding predominance and superiority satisfied under nearly identical circumstances on a contested class certification motion).  For these reasons, the Court should conditionally certify the Settlement Class for settlement purposes.

## C.    The Settlement Satisfies the Requirements of Rule 23(e)(2).

"Rule 23(e) of the Federal Rules of Civil Procedure obliges parties to seek approval from the district court before settling a class-action lawsuit." *In re: Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales Pracs. & Prod. Liab. Litig.*, 952 F.3d 471, 483 (4th Cir. 2020) (citing Fed. R. Civ. P. 23(e)).  When a court "reviews a proposed class-action settlement, it acts as a fiduciary for the class."  *1988 Tr. for Allen Child. Dated 8/8/88 v. Banner Life Ins. Co.*, 28 F.4th 513, 525 (4th Cir. 2022).  "In fulfilling this role, the district court must conclude that a proposed settlement is 'fair, reasonable, and adequate,'" which are the three requirements established by Rule 23(e)(2) of the Federal Rules of Civil Procedure.  *Id.* (citing Fed. R. Civ. P. 23(e)(2)).  "In determining whether a settlement is fair, reasonable, and adequate," Rule 23(e)(2) requires the court to consider:

> (A)    the class representatives and class counsel have adequately represented the class;
>
> (B)    the proposal was negotiated at arm's length;
>
> (C)    the relief provided for the class is adequate, taking into account:
>
>> (i)    the costs, risks, and delay of trial and appeal;
>>
>> (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>
>> (iii)    the terms of any proposed award of attorneys' fees, including timing of payments; and
>>
>> (iv)    any agreement required to be identified under Rule 23(e)(3);
>
> (D)    the proposal treats class members equitably relative to each other.

*Galloway*, 2020 WL 7482191 at *4 (E.D. Va. 2020) (quoting Fed. R. Civ. P. 23(e)(2)).  In making this assessment, district courts are provided with "considerable deference" because "the court 'is exposed to the litigants, and their strategies, position[s], and proofs, and is on the firing line and can evaluate the action accordingly.'"  *Lumber Liquidators*, 952 F.3d at 484 (quoting *Joel A. v. Giuliani*, 218 F.3d 132, 139 (2d Cir. 2000)).

> i.   *Plaintiff and Class Counsel Have Adequately Represented the Class.*

Rule 23(e)(2)'s first factor examines whether "the class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A).  This assessment is "redundant of the requirements of Rule 23(a)(4) and Rule 23(g), respectively." *In re Flint Water Cases*, 571 F. Supp. 3d 746, 780 (E.D. Mich. 2021) (quoting Albert Conte & Herbert Newberg, *Newberg on Class Actions* § 13:48 (5th ed. June 2021 update)).  Rule 23's adequacy requirements are met if: "(1) the named plaintiff has interests common with, and not antagonistic to, the Class'[s] interests; and (2) the plaintiff's attorney is qualified, experienced and generally able to conduct the litigation." *Gibbs v. Stinson*, 2021 WL 4812451, at *16 (E.D. Va. Oct. 14, 2021) (quoting *Milbourne v. JRK Residential Am., LLC*, 2014 WL 5529731, at *8 (E.D. Va. Oct. 31, 2014)).

This first factor is easily satisfied.  Plaintiffs' interests and those of Class Members are fully aligned as they were all subjected to the same unlawful lending practices. *See, e.g.*, *Stinson*, 2021 WL 4812451, at *16 (finding that the plaintiffs were adequate because they had "no interests antagonistic to the class's interest" and shared "identical interest of establishing Defendants' liability based on the same questions of law and fact").

Additionally, Class Counsel has been practicing in the field of consumer protection for more than 30 years, and they believe that this settlement stacks up very favorably when compared to other settlements over that time. *See* Ex. 2, Kelly Decl. ¶¶ 13-16; Ex. 3, Bennett Decl. ¶¶ 29-32; Ex. 4, Caddell Decl. ¶¶ 38-39; Ex. 5, Terrell Decl. ¶ 12; Ex. 6, Wessler Decl. ¶ 11.  This is

particularly true when considering that the relief afforded by the Settlement in this case follows the substantial relief already awarded to the Class under the terms of the *Galloway III* settlement. Courts recognize that the opinion of experienced and informed counsel in favor of settlement should be afforded substantial consideration in determining whether a class settlement is fair and adequate.  *See*, *e.g.*, *In re MicroStrategy*, 148 F. Supp. 2d at 665.

Given the substantial relief afforded the proposed settlement—especially when contrasted against the risks associated with litigating this matter—it is fair and appropriate for approval.  *See S.C. Nat'l Bank v. Stone*, 139 F.R.D. 335, 339 (D.S.C. 1991) (concluding fairness met where "discovery was largely completed as to all issues and parties," settlement discussions "were, at times, supervised by a magistrate judge and were hard fought and always adversarial," and those negotiations "were conducted by able counsel" with substantial experience).

ii.     *Negotiations Were at Arm's Length and Involved a Respected Mediator.*

The second factor examines whether the settlement "was negotiated at arm's length."  Fed. R. Civ. P. 23(e)(2)(B); *see also Flint Water Cases*, 571 F. Supp. 3d at 780 (explaining that the second factor requires courts to "consider whether the negotiations were conducted at arm's length with no evidence of collusion or fraud").  "Courts presume the absence of fraud or collusion unless there is evidence to the contrary." *Id.* (quoting *UAW v. Gen. Motors, Corp.*, 2006 WL 891151, at *21 (E.D. Mich. Mar. 31, 2006)).  Here, the seven-year history of this litigation demonstrates that there was no collusion or fraud between the parties.

To be sure, courts look at several other factors to help confirm that negotiations were at arm's length, including the presence of a mediator.  As the leading class action treatise explains: "There appears to be no better evidence of [a truly adversarial bargaining process] than the presence of a third-party mediator."  Conte & Newberg, *supra*, § 13:48; *see also Flint Water Cases*, 571 F. Supp. 3d at 780 ("highly experienced mediators" provide "ample protections in their roles").

Here, over the course of seven years, Plaintiffs and Defendants attended several unsuccessful mediations with a private mediator, as well as with then-United States Magistrate Judge David Novak and United States Magistrate Judge Mark R. Colombell. *See, e.g.*, Ex. 1 at pg. 5. Although the parties had previously failed to reach an agreement on multiple occasions, they finally agreed to a final settlement agreement in March 2024 during an in-person settlement conference with Judge Colombell.

The history of this litigation, as well as the involvement of multiple mediators, establishes that there was no collusion among the parties.

### iii.  *The Relief Provided to the Class is Adequate.*

Rule 23(e)(2)(C) requires the Court to consider whether the relief is adequate, considering:

> (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3).

Fed. R. Civ. P. 23(e)(2)(C).  These subfactors overlap with the factors that the Fourth Circuit has held are required to evaluate a class settlement's fairness, reasonableness, and adequacy.  *Lumber Liquidators*, 952 F.3d at 484 n.8 (citing *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 159 (4th Cir. 1991)).  An analysis of each factor shows that this settlement is fair, reasonable, and adequate.

The first Rule 23(e)(2)(C) sub-factor requires the Court to evaluate the settlement against the costs, risks, and delay of trial and appeal.  This factor strongly supports approval of the settlement. While Class Counsel strongly believes in the strength of this case, they also acknowledge that there are substantial risks associated with continued litigation.  Defendants have disputed Plaintiffs' claims since the inception of this case and have raised several defenses, including factual disputes over the degree and nature of their alleged involvement in the lending enterprise and possible merits defenses, such as mistake of law.  As the history of this litigation

demonstrates, Defendants would no doubt continue to exhaust all possible defenses, including appeals of the judgment in the *Williams* matter. The Settlement avoids this significant cost, risk, and time by providing significant settlement benefits to the Class Members now.

Rule 23(e)(2)(C)'s second sub-factor requires the Court to evaluate the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims.  Here, just as with the prior settlement (and multiple other similar settlements approved by this Court), Class Members will receive the cash benefits based on the unlawful amount repaid on their loans—without having to submit a claim form or any proof of their damages.  Thus, cash payments will be automatically distributed.  This is important because "[t]he use of objective criteria to determine settlement distribution is a hallmark of fairness." *Flint Water Cases*, 571 F. Supp. 3d at 781.  Because an automatic cash payment is based on objective criteria and does not require any action by Class Members, this factor weighs strongly in favor of approving the settlement.

Rule 23(e)(2)(C)'s third sub-factor requires the Court to evaluate the request for attorneys' fees, including the timing of the request.  The focus of this analysis is whether there are signs that "counsel sold out the class's claims at a low value in return for [a] high fee."  Conte & Newberg, *supra*, § 13:54.  There are no such indications here.  As outlined above, there is no sign that Class Counsel left any money on the negotiating table.  Instead, they have obtained $65 million settlement fund for automatic payments to Class Members who meet objective criteria, which is in addition to the $8.7 million in payments and the cancelled debt obtained in *Galloway III*.  This is significant, additional consideration for the Class Members' claims.

It is also important to note that the attorneys' fee component of the settlement was negotiated under the supervision of Judge Colombell, who would notice if Class Counsel were

compromising the class members' claims for their own benefit.  *Flint Water Cases*, 571 F. Supp. 3d at 782.  As to the timing of the attorney fee award request, "courts are to consider this to prevent situations in which the request for attorney fees is unknown and could upset the compensation to claimants at the time of final approval."  *Id.*  There is no such concern here as the proposed Notice to the Settlement Class will identify the requested attorneys' fees.

Finally, there are no agreements that need to be identified under Rule 23(e)(3).

### iv.   *The Settlement Treats Class Members Equitably Related to Each Other.*

The final factor under Rule 23(e)(2) requires a court to consider whether "the proposal treats class members equitably relative to each other."  Fed. R. Civ. P. 23(e)(2)(D) (emphasis added).  This factor considers whether class members have been treated in a fair and impartial manner, but "[t]here is no requirement that all class members in a settlement be treated equally." *Swinton v. SquareTrade, Inc.*, 454 F. Supp. 3d 848, 876 (S.D. Iowa 2020) (emphasis in original) (citation omitted).  And when considering this factor, a court "must balance the claims of those with potentially substantial damages with those with potentially minimal or insignificant damages."  *Id.* (citation omitted).

The Settlement here achieves this balance. It limits payments to only those Members who made unlawful payments on their loans based on the legal protections of their respective states of residence. The Settlement further awards payments on a *pro rata* basis after considering the amount of each qualifying Class Member's payments above the lawful amount in their respective states. The Settlement thus maximizes the possible payout for Class Members who have suffered actual monetary harm, while also obtaining important injunctive relief for those who do not receive payments. Moreover, Class Members who do not receive any payments will not provide a broad release, but instead, only their potential right "to bring a class action, collective action, or mass

action against Released Parties[.]" Ex. 1 at § 2.18. Class Members, therefore, will be treated equitably relative to each other and their damages.

## IV.    The Proposed Notice and Notice Plan Satisfy Rule 23

Following preliminary approval, the class members must be given notice about the nature of the settlement and of their rights. Rule 23(e)(1) requires that: "The court must direct notice in a reasonable manner to all class members who would be bound by the proposal."  Rule 23(c)(2)(B) sets forth the contents of a notice to be sent to members of a Rule 23(b)(3) class:

> For any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

The proposed Notice to the Settlement Class, which is an Exhibit to the Settlement Agreement, and the notice program for delivering that notice satisfy these requirements.  Ex. 1 at § 5.3.  Indeed, the Court in *Galloway III* approved a similar notice plan and a very similar notice to the one here.  *Galloway III*, Dec. 20, 2019 Preliminary Approval Order, Dkt. 65 at pg. 5-6. That plan and notice program resulted in a "successful delivery rate of 99.67%," and the Court found that "the notice provided to class members satisfies due process and that it was both reasonable, and the best notice practicable under the circumstances." *Galloway III*, 2020 WL 7482191 at *6.

As in *Galloway III*, the proposed notice program here will provide individual direct notice. Under the Settlement Agreement, the Settlement Administrator will first email direct notice to each Settlement Class Member at his or her most recent email address shown in Big Picture's loan records or as updated as a result of the *Galloway III* settlement as maintained by the Administrator, as maintained in the ordinary course of business, for each loan at issue. Ex. 1 at §§ 3.3, 5.3(a)).  If

email notice results in a bounce-back email, direct notice will be mailed to Settlement Class Members via first class mail and returned direct notices will be re-mailed if they are returned within twenty days of the postmark date and contain a forwarding address. *Id.* The Administrator also will update and continue to maintain the previous website, www.bigpictureloansclassaction.com, on which pertinent information will be made available to Settlement Class Members, including the operative complaint; the Settlement Agreement; any motions and memoranda seeking approval of the proposed class action settlement, approval of attorneys' fees and costs, or approval of service awards; and any orders of this Court relating to the proposed class action settlement. *Id.* at § 5.3(b).

The Settlement's robust notice and administration plan will ensure the most Settlement Class Members receive the payments to which they are entitled. Class Notice will be sent in accordance with Federal Rule of Civil Procedure 23(c) in the manner approved by the Court by a combination of email notice to verified email addresses or U.S. Mail to each Settlement Class Member identified on the Class List.

As the *Manual for Complex Litigation* recognizes, mail notice is the ideal method of informing class members of a class settlement where such members can be identified. *See* Manual for Complex Litigation § 21.311; *see also Henggeler v. Brumbaugh & Quandahl P.C.*, No. 8:11-cv-334, 2013 WL 5881422, at *5 (D. Neb. Oct. 25, 2013) ("The court finds that the proposed notice is clearly designed to advise the class members of their rights. The Agreement provides for individual mailed notices to each of the class members. Individual notice is the best notice practicable.").

For these reasons, the proposed Notices and Notice Plan represent the "best notice that is practicable under the circumstances," and they therefore meet the notice requirements of Rule 23. The Notices and Notice Plan should thus be approved by the Court.

### iii.    CONCLUSION

The proposed class action settlement is a hard earned and excellent result considering the circumstances of the litigation, the strength of Plaintiffs' case, and the resources of the Defendants. The terms of the proposed class action settlement, as well as the circumstances of negotiations and its elimination of further costs caused by litigating this case through trial and appeal, satisfy the structures for preliminary approval.

For these reasons, Plaintiffs respectfully request that the Court issue an Order that: (1) grants preliminary approval to the proposed settlement; (2) approves of the Proposed Notice filed concurrently with the Motion for Preliminary Approval; (3) orders that the Proposed Notice be immediately mailed to Settlement Class Members; (4) approves the appointment of American Legal Claims Services as the Settlement Administrator; and (5) sets the date of the Final Fairness Hearing on October 28, 2024.[11]

<div style="margin-left:40%">

Respectfully submitted,
**PLAINTIFFS**

</div>

Date: May 21, 2024

<div style="margin-left:40%">

_____/s/_____
Kristi C. Kelly, Esq., VSB #72791
Andrew J. Guzzo, Esq., VSB #82170
Casey S. Nash, Esq., VSB #84261
KELLY GUZZO, PLC
3925 Chain Bridge Road, Suite 202
Fairfax, VA 22030
(703) 424-7572
(703) 591-0167 Facsimile
Email: kkelly@kellyguzzo.com
Email: aguzzo@kellyguzzo.com

</div>

---

[11] During a conference call with the Court, the parties previously agreed to this date for the final approval hearing.

Email: casey@kellyguzzo.com

Leonard A. Bennett, VSB #37523
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Blvd., Ste. 1-A
Newport News, VA 23601
Telephone: (757) 930-3660
Facsimile: (757) 930-3662
Email: lenbennett@clalegal.com